**UNITED STATES of America,**
**Appellee,**

v.

**Arthur JONES and Preston M. Jeter,**
**Appellants.**

**Nos. 819, 823, Dockets 73–1070, 73–1260.**

United States Court of Appeals,
Second Circuit.

Submitted April 30, 1973.

Decided June 11, 1973.

---

Thomas F. Maxwell, Jr., Asst. U. S. Atty. (Stewart H. Jones, U. S. Atty., for the District of Connecticut, of counsel), for appellee.

Hubert J. Santos, Asst. Public Defender, Hartford, Conn., for appellant Jones.

J. Daniel Sagarin, Bridgeport, Conn., for appellant Jeter.

Before FRIENDLY and HAYS, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

These consolidated appeals are from convictions for taking and carrying away with intent to steal a coat and purse belonging to Ethel Ford at the Veterans Administration Hospital at West Haven, Connecticut.[1] We affirm.

Appellants contend that (1) the evidence was insufficient to support the convictions; (2) the Government failed to prove that the United States accepted jurisdiction of the Veterans Administration Hospital, an issue improperly taken from the jury; and (3) the court erred in denying appellants' motions to strike the jury panel.

### Sufficiency of Evidence

On April 8, 1972 appellants, with Frank Lyon, visited Joseph Miller, a patient on the sixth floor of the Veterans Hospital. Lyons testified that he left Jones and Jeter at the elevator on the sixth floor, took the elevator to the ground floor, and went to his car on the parking lot to wait for Jones and Jeter, and that Jones returned to the car about a half hour later. Lyons and Jones drove away, but returned later for Jeter.

Leroy Bailey, also a sixth floor patient, testified that he saw Jones "peek" toward a coat and purse on a chair near a water fountain in the sixth floor television and conference room where Bailey was watching television, when Jones and Jeter entered the room and went to the drinking fountain. According to Bailey, Jones and Jeter left the room together and Jones returned alone five to ten minutes later, went directly to the chair, picked up the coat and purse and pro-

---

* Of the District Court for the District of Montana, sitting by designation.

1. Appellants were charged by indictment with the theft of property of a value in excess of $100.00, in violation of 18 U.S.C. §§ 661 and 2(a) and 2(b). The court denied motions for acquittal at the close of the Government's case, but held that the Government had failed to prove that the property had a value in excess of $100.00, and appellants were convicted of the lesser included offense. Jones was sentenced to imprisonment for one year, with execution suspended, and probation for three years. Jeter was sentenced for a term of six months, with execution suspended, and probation for two years.

ceeded to the elevator, where he met Jeter. Bailey immediately notified Ethel Ford, the owner of the coat and purse.

Mrs. Ford, accompanied by James Bronson, another hospital employee, took another elevator to the ground floor, where they met appellants. Mrs. Ford testified that she observed Jeter "carrying his trench coat, with my coat wrapped in it." She "yanked" at an exposed portion of her coat, causing Jeter's coat and her coat and pocketbook to fall to floor. Bronson corroborated this testimony.

Bronson took Jeter back to the sixth floor. Jeter told Bronson "he was leaving and said that he made a mistake." Bronson observed Jones running out of the front door of the building.

■ No evidence was offered on behalf of the appellants. The evidence presented by the Government was ample to sustain both convictions.[2]

### Proof of Jurisdiction

The lands on which West Haven Veterans Administration Hospital are located were acquired by deed on April 12, 1948. The Government, pursuant to 40 U.S.C. § 255,[3] was required to prove that the United States had accepted the exclusive jurisdiction ceded by the State of Connecticut with respect to these lands. To do so, the Government presented the testimony of a local law enforcement officer that the West Haven Police Department did not enforce state laws or local ordinances on the hospital grounds.

After resting, and following appellants' motion for acquittal, the Government was permitted to reopen its case to introduce in evidence a copy of a letter from the Executive Assistant Administrator of the Veterans Administration, signed "(For and in the absence of the Administrator)" accepting exclusive jurisdiction of the lands acquired as a site for the West Haven Veterans Administration Hospital. Receipt of the letter was acknowledged by the Governor of Connecticut on November 12, 1948.

■ The court did not abuse its discretion in permitting the Government to reopen for the purpose of introducing this letter in evidence.

While the letter was not authenticated in compliance with Rule 44(a)(1) of the Federal Rules of Civil Procedure, counsel for appellants expressly waived any "ob-

---

2. In contending that the Government's evidence was insufficient to establish an intent to steal, counsel argue that if appellants had "intended to steal the coat and pocketbook, it is unlikely they would have followed the course of conduct they did", particularly in taking an elevator which required passing a reception desk at which there was usually a guard, when they could have taken a stairway to a different exit and avoided the guard. While appellants may have used poor judgment, the evidence was clearly sufficient to permit the jury to find the requisite intent to steal.

3. 40 U.S.C. § 255 provides, in pertinent part:

"* * * * Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establish-ment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted. R.S. § 355; June 28, 1930, c. 710, 46 Stat. 828; Feb. 1, 1940, c. 18, 54 Stat. 19; Oct. 9, 1940, c. 793, 54 Stat. 1083; Sept. 1, 1970, P.L. 91–393, § 1, 84 Stat. 835."

jection to the certification of this * * * exhibit according to" this rule.

■ Appellants now argue that the "acceptance of jurisdiction over the land on which the hospital was located" was a factual issue which should have been submitted to the jury. We do not agree and hold that the district court properly determined this question as a matter of law and submitted to the jury the question of whether the offense was committed on land determined by the court to be within the special territorial jurisdiction of the United States. The court charged the jury:

"Now, in order to find either, or both of the defendants guilty of the crime charged, the government must prove, beyond a reasonable doubt, each of the following elements with reference to each defendant. First, that the acts charged were committed within the special territorial jurisdiction of the United States, and this connection I charge you as a matter of law, if you accept the defendants governments witnesses, Mrs. Ford, Mr. Bailey, and Mr. Bronson with reference to the locale of the acts charged, namely this one of the Veterans Administration Hospital building in West Haven, and this is a case within the special territorial jurisdiction of the United States." [4]

■ It is recognized that there is frequently a dispute as to whether an offense is committed within or without a jurisdictional boundary. This is a factual issue which should be submitted to the jury, as the court did in this case.[5]

Counsel have not cited, nor have we found, a case where it has been contended that the question of acceptance of jurisdiction or the location of territorial boundaries should be determined by a jury. There are many cases in which it is clear that these questions have been determined by the court. For example in United States v. Lewis, 111 F. 630, 631 (C.C.W.D.Tex.1901), the court charged the jury as a matter of law that the United States had exclusive jurisdiction over the ceded lands, but that the question of whether the act was committed within the territory so ceded was for the jury. And in Walsh v. Archer, 73 F.2d 197, 198 (9th Cir. 1934) the district court had charged the jury that the determination of boundaries was a matter for the court and the question of whether the offense was committed within these boundaries a question for the jury. Other cases which impliedly support our conclusion that questions of acceptance of jurisdiction or territorial boundaries should be determined by the court (without, however, any claim that the issue should be submitted to a jury having been asserted) include Rodman v. Pothier, 264 U.S. 399, 44 S.Ct. 360, 68 L.Ed. 759 (1924); United States v. Johnson, 426 F.2d 1112 (7 Cir. 1970), cert. denied, 400 U.S. 842, 91 S.Ct. 86, 27 L. Ed.2d 78; United States ex rel. Greer v. Pate, 393 F.2d 44 (7 Cir. 1968), cert. denied, 393 U.S. 890, 89 S.Ct. 209, 21 L. Ed.2d 168; United States v. Holt, 168 F. 141 (Cir.Ct.W.D.Wash.1909), affirmed, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).

The cases relied upon by appellants involve factual elements in determining jurisdiction, as the locus of the crime in Louie v. United States, 254 U.S. 548, 41 S.Ct. 188, 65 L.Ed. 399 (1921); ownership and registry of a vessel in United States v. Ross, 439 F.2d 1355 (9 Cir. 1971), cert. denied, 404 U.S. 1015, 92 S. Ct. 686, 30 L.Ed.2d 661; determination of maximum price and whether it had been exceeded under the Emergency Price Control Act of 1942 in Carothers v. United States, 161 F.2d 718 (5 Cir. 1947); and whether stolen goods had traveled in interstate commerce in Unit-

4. Moreover, there was no factual dispute regarding the acceptance of jurisdiction by the United States. The sole question raised below was the admissibility of the letter of acceptance.

5. Actually in this case there was no factual dispute with respect to the locale of the offense.

ed States v. Manuszak, 234 F.2d 421 (3 Cir. 1956).

Here, the court's instruction correctly left the factual element—the locus of the crime—to the jury, while reserving the question of law—whether the federal government had accepted jurisdiction—to itself.

### Challenge to Jury Panel

Juries in the District of Connecticut are selected at random from voter registration lists under a plan adopted by the district court and approved by the reviewing panel of this court, pursuant to 28 U.S.C. § 1863, a part of the Jury Selection and Service Act of 1968. The use of voter registration lists as the sole source of names for jury service was approved by this court in United States v. Guzman, 468 F.2d 1245, 1248 (2 Cir. 1972) in the absence of "systematic discrimination sufficient to require the use of alternative sources . . . ".[6]

■ Prior to the selection of the jury appellants moved to strike the jury panel "on the grounds that blacks and other minority members of the population were not adequately represented on the jury panels, and that * * * the method of selection of jurors in this district is inadequate to accomplish the goals of the Federal Jury Service and Selection Act of 1968 * * *." They made an offer of proof and requested permission to subpoena witnesses, but did not file a motion "containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title", as required by 28 U.S.C. § 1867(d).[7] Section 1867(e) provides that, "The procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal crime * * * may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title." Compliance

with these express statutory requirements is necessary to question the validity of a plan adopted and approved pursuant to the Jury Selection and Service Act.[8]

Affirmed.

---

6. See 28 U.S.C. § 1863(b)(2).

7. Appellants renewed their motion after the jury was selected, and the court called attention to the fact that there was no sworn statement of facts as required by 28 U.S.C. 1867(d).

8. See United States v. James, 453 F.2d 27, 29 (9 Cir. 1971).