**UNITED STATES of America, Appellee,**

v.

**The ALLIED TOWING CORPORATION, Appellant.**

No. 77–2300.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 8, 1978.

Decided June 20, 1979.

---

G. W. Birkhead, Norfolk, Va. (Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellant.

Paul G. Gorman, Jr., Crim. Div., Dept. of Justice, Washington, D. C. (William B. Cummings, U. S. Atty., Alexandria, Va., on brief), for appellee.

Before BUTZNER, HALL and PHILLIPS, Circuit Judges.

BUTZNER, Circuit Judge:

Allied Towing Corporation appeals a conviction under 18 U.S.C. § 1115, which provides criminal penalties against shipowners whose violation of the law causes the death of any person.[1] Allied was convicted for the homicide of two employees who died in an explosion while they were welding the hull of an Allied tank barge at a pier on the Elizabeth River in Norfolk, Virginia. The evidence showed that Allied permitted the welding without securing the gas-free certification required by Coast Guard regulations and that ignition of gases within the barge caused the fatal explosion. On appeal, Allied assigns error to the district court's denial of motions to dismiss for lack of jurisdiction and double jeopardy. We affirm.

The original indictment against Allied charged that the offense occurred "in the Eastern District of Virginia and within the jurisdiction of this Court." Allied filed a timely motion to dismiss for lack of jurisdiction. On the day set for a bench trial, the district court—without first disposing of Allied's motion—received all of the evidence in the form of a stipulation by both parties. After examining the stipulation, the court ruled that it was without jurisdiction.

The government then secured a second indictment which charged that the offense occurred "on the Elizabeth River, a navigable water of the United States, within the Eastern District of Virginia, and within the admiralty jurisdiction of the United States." Allied again sought dismissal for lack of jurisdiction. It also moved to dismiss on the ground that the second indictment violated the double jeopardy clause of the fifth amendment. The district court denied both motions and rendered a judgment of conviction on the basis of a stipulation identical to the one filed before the first dismissal.

I

Although 18 U.S.C. § 1115 contains no jurisdictional limitation, Allied contends that it proscribes only homicides committed within the special maritime and territorial jurisdiction of the United States as defined in 18 U.S.C. § 7.[2] The special maritime

---

1. Section 1115, Title 18 U.S.C., provides:

   Every captain, engineer, pilot, or other person employed on any steamboat or vessel, by whose misconduct, negligence, or inattention to his duties on such vessel the life of any person is destroyed, and every owner, charterer, inspector, or other public officer, through whose fraud, neglect, connivance, misconduct, or violation of law the life of any person is destroyed, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

   When the owner or charterer of any steamboat or vessel is a corporation, any executive officer of such corporation, for the time being actually charged with the control and management of the operation, equipment, or navigation of such steamboat or vessel, who has knowingly and willfully caused or allowed such fraud, neglect, connivance, misconduct, or violation of law, by which the life of any person is destroyed, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

2. Section 7, Title 18 U.S.C., provides in part:

   The term "special maritime and territorial jurisdiction of the United States", as used in this title, includes:

   (1) The high seas, any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, and any vessel belonging in whole or in part to the United

jurisdiction does not include navigable waters within the federal admiralty jurisdiction that are also within the territorial jurisdiction of a particular state. Since the Elizabeth River is within Virginia's territorial jurisdiction, Allied argues, the district court had no jurisdiction over this case.

The government acknowledges that the Elizabeth River is within Virginia's jurisdiction, but it contends that § 1115 is not subject to the definition of the special maritime jurisdiction in § 7. The government insists that Congress intended § 1115 to reach homicides committed anywhere within federal admiralty and maritime jurisdiction, regardless of any state's concurrent power to punish for the offense.

The issue, therefore, is whether the limitation in § 7 prevents the application of § 1115 to a homicide that occurred on navigable waters within both the general admiralty jurisdiction of the United States and the territorial waters of Virginia. Unless § 7 modifies § 1115, Allied's conviction must stand because 18 U.S.C. § 3231 gives federal district courts jurisdiction over all offenses against the laws of the United States.

Since § 1115 itself contains no express jurisdictional language, we must look to its history in order to ascertain its reach. The earliest precursor of § 1115 appeared in 1838 as part of an act to prevent boiler explosions on steamboats plying "the bays, lakes, rivers, or other navigable waters of the United States."[3] The statute provided for the prosecution of officers or crewmen whose negligence caused the death of any person aboard their vessel.[4]

In 1871, Congress enacted a comprehensive statute "to provide for the better Security of Life" on board steamships.[5] The law regulated "steamers navigating the lakes, bays, inlets, sounds, rivers, harbors, or other navigable waters of the United States, when such waters are common highways of commerce, or open to general or competitive navigation."[6] Section 57 of the act[7] is the prototype of the statute under which Allied was convicted.

The Revised Statutes of 1874 denominated § 57 as § 5344 and placed it in a chapter dealing with crimes arising within the maritime and territorial jurisdiction of the United States.[8] Other statutes in the same chapter—such as those prohibiting murder, manslaughter, and rape—expressly precluded federal jurisdiction over violations occurring on waters within the jurisdiction of any state.[9] Section 5344, however, contained no such restriction.

*United States v. Holtzhauer*, 40 F. 76, 78 (C.C.D.N.J.1889), sustained an indictment brought under Revised Statute § 5344, despite the defendant's objection that the statute did not apply to a homicide committed on navigable waters within the jurisdiction of New Jersey. The history of the statute and the *Holtzhauer* decision demonstrate conclusively that Congress intended this antecedent of § 1115 to reach violations occurring anywhere within the general admiralty and maritime jurisdiction of the federal courts.[10]

The 1909 revision of the penal laws, however, expressly restricted the reach of the

States or any citizen thereof, or to any corporation created by or under the laws of the United States, or of any State, Territory, District, or possession thereof, when such vessel is within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State.

(2) Any vessel registered, licensed, or enrolled under the laws of the United States, and being on a voyage upon the waters of any of the Great Lakes, or any of the waters connecting them, or upon the Saint Lawrence River where the same constitutes the International Boundary Line.

3. Act of July 7, 1838, ch. 191, § 2, 5 Stat. 304.

4. *Id.* § 12, 5 Stat. 306.

5. Act of Feb. 28, 1871, ch. 100, 16 Stat. 440.

6. *Id.* § 41, 16 Stat. 453.

7. *Id.*, 16 Stat. 456.

8. 18 Stat. 1038.

9. *E.g.*, Rev.Stat. §§ 5339, 5341, 5345, 18 Stat. 1038.

10. In 1905, Congress added to Rev.Stat. § 5344 a provision substantially the same as the second paragraph of present 18 U.S.C. § 1115. Act of Mar. 3, 1905, ch. 1454, § 5, 33 Stat. 1025.

statute. Congress codified Revised Statute § 5344 in § 282 of the new Criminal Code.[11] There the statute was subject to the definition of the special maritime and territorial jurisdiction in Criminal Code § 272, the prototype of 18 U.S.C. § 7. Thus, the law no longer applied to homicides committed on waters within the territorial jurisdiction of any state.[12] The 1926 recodification of the federal statutes placed Criminal Code §§ 272 and 282 in 18 U.S.C. §§ 451 and 461, but the jurisdictional limitation engrafted onto the homicide section remained in force.[13]

The jurisdictional restriction disappeared in 1948, when Congress revised and reenacted the criminal statutes. The old chapter on crimes within the special maritime and territorial jurisdiction was abolished, and its component sections were distributed into other parts of Title 18.[14] The definition in old 18 U.S.C. § 451 moved to its present place in 18 U.S.C. § 7.[15] What had been 18 U.S.C. § 461 went into the homicide chapter as 18 U.S.C. § 1115.[16] Although the old jurisdictional qualification was preserved by adding new language to other sections taken from the chapter on maritime offenses,[17] § 1115 became a statute of general application. The reviser's note explained the reason for the change:

> Section [1115] restores the intent of the original enactments, R.S. § 5344, and act Mar. 3, 1905, ch. 1454, § 5, 33 Stat. 1025, and makes this section one of general application. In the Criminal Code of 1909, by placing it in Chapter 11, limited to places within the special maritime and territorial jurisdiction of the United States, such original intent was inadvertently lost as indicated by the entire absence of report or comment on such limitation.[18]

*Hoopengarner v. United States*, 270 F.2d 465 (6th Cir. 1959), appears to be the only case that discusses the reach of federal jurisdiction under 18 U.S.C. § 1115. In *Hoopengarner*, the defendant was convicted under § 1115 for the homicide of a woman who fell from a yacht with which his boat collided on connecting waters in the Great Lakes. The court found that the incident occurred within the special maritime jurisdiction defined by 18 U.S.C. § 7 and sustained the conviction. Since § 7 provided a basis for jurisdiction, the court did not consider whether § 1115 could be invoked where the homicide occurred within the general admiralty jurisdiction but outside the special maritime jurisdiction. *Hoopengarner*, therefore, is not dispositive of this appeal.

Section 1115 differs from statutes dealing with crimes such as murder that happen to be committed in areas where both the state and federal governments have an interest. The restriction contained in § 7 shows that Congress left the prosecution of such crimes to the states. The history of § 1115 discloses, however, that Congress enacted this statute as an integral part of its regulation of the nation's maritime commerce. As the reviser of the 1948 code explained, § 1115— like Revised Statute § 5344 and its predecessors—reaches homicides committed anywhere within the general admiralty jurisdiction of the federal courts. We therefore hold that the district court had jurisdiction to convict Allied for violating § 1115 on the navigable waters of the Elizabeth River.

11. Act of Mar. 4, 1909, ch. 321, 35 Stat. 1144.

12. *Id.*, 35 Stat. 1142.

13. Act of June 30, 1926, ch. 712, 44 Stat. 498, 499.

14. *See* H.R.Rep. No. 304, 80th Cong., 1st Sess. A6–A7 (1947).

15. Act of June 25, 1948, ch. 645, 62 Stat. 685.

16. *Id.*, 62 Stat. 757.

17. *E.g., id.*, 62 Stat. 756, 795 (current versions at 18 U.S.C. §§ 1111, 1112, 2031); *see* H.R.Rep. No. 304, 80th Cong., 1st Sess. A6 (1947).

18. H.R.Rep. No. 304, 80th Cong., 1st Sess. A91 (1947). To the extent that the reviser's note on 18 U.S.C. § 1115 is inconsistent with his note on 18 U.S.C. § 7, we think that the specific note on § 1115 more clearly expresses the intent of Congress.

## II

Allied also argues for reversal on the ground that the indictment under which it was convicted violated the fifth amendment guarantee against double jeopardy. Since jeopardy attached under the original indictment when the district court received the stipulated evidence before granting Allied's motion to dismiss, Allied contends, conviction under a second indictment for the same offense is unconstitutional.

In *Finch v. United States*, 433 U.S. 676, 97 S.Ct. 2909, 53 L.Ed.2d 1048 (1977), on which Allied relies, the Supreme Court held that the double jeopardy clause prevented the government from appealing a dismissal entered after the district court had received an agreed statement of facts. The district court in *Finch*, however, addressed factual elements of the crime charged and based the dismissal on its conclusion that the information against the defendant failed to state an offense. *See United States v. Finch*, 395 F.Supp. 205, 207, 210, 213 (D.Mont.1975). Thus, the dismissal resolved questions determinative of guilt in favor of the defendant. *See* 433 U.S. at 677, 97 S.Ct. 2909.

We believe that *Finch* does not require reversal of Allied's conviction. When the district court considered the first indictment against Allied, it received a stipulation agreed to be the only evidence in the case. The court's ruling, however, addressed only Allied's motion to dismiss that indictment for lack of jurisdiction. The court touched on none of the merits of the charge. Because the ruling did not resolve in the defendant's favor any factual element of the offense charged, the government could rectify the deficiency in its original case and proceed to trial on a new indictment even though the district court had received evidence under the first indictment. *See United States v. Scott*, 437 U.S. 82, 96–97, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Lee v. United States*, 432 U.S. 23, 30, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977). Dismissal of an indictment for failure to show jurisdictional facts cannot bar prosecution under a good indictment. *See Wol-*

*koff v. United States*, 84 F.2d 17 (6th Cir. 1936). We therefore hold that trial on the second indictment did not subject Allied to double jeopardy.

*Affirmed.*