**William BRYANT**

v.

**Kenneth E. TAYLOR, Warden, et al.**

**Civ. No. K–91–2075.**

United States District Court,
D. Maryland.

July 7, 1992.

Stanley S. Herr, Melvin J. Sykes, Laura Chai (specially admitted), Baltimore, Md., for plaintiff.

J. Joseph Curran, Jr., Atty. Gen. of Md., and David P. Kennedy, Asst. Atty. Gen. of Md., for defendants.

FRANK A. KAUFMAN, Senior District Judge.

Bryant, convicted on April 6, 1978 in the Circuit Court for St. Mary's County, Maryland, of storehouse breaking, appealed his conviction to Maryland's intermediate appellate court, the Court of Special Appeals. In that court, Bryant challenged the jurisdiction of the trial court on the ground that the record did not establish when or if the United States had acquired the post office which constituted the storehouse and that therefore it was not clear whether there was jurisdiction in a Maryland state court to try the offense. That issue had not been raised at trial. However, the Court of Special Appeals noted that Bryant had "a perfect right to raise this issue [on appeal] since Maryland Rule 1085 provides that 'a question as to the jurisdiction of the lower court may be raised and decided in this Court [i.e. the Court of Special Appeals] whether or not raised and decided in the lower court.'" *Bryant v. State of Md.,* No. 385 (Md.Ct.Spec.App. Dec. 27, 1978) (unreported).[1] Accordingly, the Court of Special Appeals remanded the case to the trial court for determination of that single issue.

Article I, § 8, cl. 17 of the United States Constitution grants to the federal Congress the power, subject to the consent of the state involved, to exercise exclusive jurisdiction with respect to certain properties acquired by the United States. By statute passed in 1906, Maryland consented to the acquisition by the United States of post offices within its borders and to exclusive federal jurisdiction with regard to criminal offenses committed in those post offices. In 1943, Maryland enacted legislation providing that it would retain concurrent jurisdiction with the federal government over offenses committed thereafter on certain properties, including post offices, owned or leased by the United States. *See generally United States v. Dreos,* 156 F.Supp. 200 (D.Md.1957) (Thomsen, C.J.).

Bryant was indicted under Art. 27, § 32 of the Maryland Code which provided in

pertinent part that "[e]very person ... who shall be convicted of a crime of breaking a storehouse, ... in the day or night with intent ... to steal, take or carry away the personal goods of another of a value of one hundred dollars ($100.00)· or more therefrom shall be guilty of a felony...." Md. Ann.Code Art. 27, § 32 (1976). The one count information, upon which Bryant was charged, read as follows:

WILLIAM BRYANT, on or about the 23rd day of January, 1978, at Valley Lee, St. Mary's County, Maryland, unlawfully did break a storehouse, to wit, the Valley Lee Post Office, the real property of the United States of America, with the intent to steal, take and carry away the personal property of the United States of America of the value of one hundred dollars ($100.00) or more therefrom; contrary to Md.Ann. Code, Art. 27, Sec. 32; and against the peace, government and dignity of the State.

A Circuit Court of a Maryland county has "jurisdiction in all civil and criminal cases" which deal with occurrences within such county's borders. Md.Cts. & Jud. Proc.Code Ann., § 1–501 (1989). Bryant raised no question at trial with regard to the jurisdiction of the trial court. Nonetheless, as noted *supra,* Bryant's right to pursue on remand that contention was recognized by the Court of Special Appeals. However, before any proceeding on remand took place, Bryant, seeking a reversal of his conviction and not simply a remand, filed a motion to reconsider in the Court of Special Appeals, and after that motion was denied, unsuccessfully sought certiorari review in the Court of Appeals of Maryland and in the Supreme Court of the United States.

Thereafter, the Circuit Court for St. Mary's County conducted a non-jury, evidentiary proceeding and determined, after receiving uncontroverted testimony, that the owner of the postal property, at the time of Bryant's alleged offense, had acquired her interest in that property in 1967 and had leased that property to the United

---

1. A copy of that slip opinion is in the official court file in *Bryant v. Sachs,* Civil No. K–81–798, relating to Bryant's first federal habeas corpus petition to this Court.

States for use as a post office from 1975 to and including the date of the alleged offense, namely, January 23, 1978. Accordingly, the state trial court concluded that it possessed jurisdiction over the case. On appeal, the Court of Special Appeals affirmed, and the Court of Appeals denied certiorari review.

Bryant next sought federal habeas corpus relief in this Court, contending that evidence admitted at his trial had been obtained in violation of his Fourth Amendment rights against unreasonable search and seizure, and also that he had been placed in double jeopardy by the remand by the Court of Special Appeals to the state trial court. During a hearing in this Court in connection with Bryant's said habeas quest, this Court, *sua sponte*, raised the question of whether Bryant desired also to assert that the remand proceedings conducted by the state trial court without a jury had violated Bryant's Sixth Amendment right to a trial by jury. This Court pointed out to Bryant that if he decided to pursue that issue, this Court would be required to deny, without prejudice, Bryant's then pending petition for federal habeas corpus relief because of non-exhaustion of state remedies. That was so because while the Fourth Amendment search and seizure and the Fifth Amendment double jeopardy claims stated by Bryant had been exhausted in the state courts, the jury trial issue had not been raised or determined in any prior state court proceedings; thus, this Court could reach none of Bryant's contentions until he had exhausted his state remedies with regard to all of them. *See Rose v. Lundy*, 455 U.S. 509, 521, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982). In that context, Bryant advised this Court that he desired to press the jury trial issue.

Subsequently Bryant did institute proceedings under Maryland's Post Conviction Procedure Act, *see* Md.Ann.Code Art. 27, §§ 645A–645J, in the Circuit Court for St. Mary's County in which Bryant unsuccessfully raised the jury issue. On appeal, the Court of Special Appeals affirmed the Circuit Court's ruling as to that question. Bryant's quest for certiorari review by the Court of Appeals was denied. Accordingly,

Bryant has fully exhausted his state remedies with regard to both his double jeopardy and trial by jury challenges.

As to the Fourth Amendment claims which Bryant raised in his earlier federal habeas corpus case in this Court, he has not restated them in the within case. Those claims are therefore not before this Court at this time. In any event, however, those contentions are without merit because the record establishes that there was probable cause for the search and seizure. Further, since the courts of the State of Maryland provided full opportunity for determination of his Fourth Amendment contentions, *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), precludes Bryant from obtaining federal habeas corpus review by this Court with respect to those issues.

I.

### Double Jeopardy

The record in this case discloses, without factual dispute, that the alleged breaking took place at the Valley Lee United States Post Office in St. Mary's County. The facts relating to whether or not that post office was leased or otherwise acquired by the federal government during the period between 1943 and 1978 do not go to any essential element of the crime charged and relate only to the possibility that the state trial court did not possess jurisdiction.

In *United States v. Allied Towing Corp.*, 602 F.2d 612 (4th Cir.1979), the Fourth Circuit considered a double jeopardy claim in the following context:

The original indictment against Allied charged that the offense occurred "in the Eastern District of Virginia and within the jurisdiction of this Court." Allied filed a timely motion to dismiss for lack of jurisdiction. On the day set for a bench trial, the district court—without first disposing of Allied's motion—received all of the evidence in the form of a stipulation by both parties. After examining the stipulation, the court ruled that it was without jurisdiction.

The government then secured a second indictment which charged that the offense occurred "on the Elizabeth River, a navigable water of the United States, within the Eastern District of Virginia, and within the admiralty jurisdiction of the United States." Allied again sought dismissal for lack of jurisdiction. It also moved to dismiss on the ground that the second indictment violated the double jeopardy clause of the fifth amendment. The district court denied both motions and rendered a judgment of conviction on the basis of a stipulation identical to the one filed before the first dismissal.

*Id.* at 613.

Writing for the Fourth Circuit, Judge Butzner, after holding that the district court possessed jurisdiction, wrote as follows with regard to the double jeopardy contention:

> Since jeopardy attached under the original indictment when the district court received the stipulated evidence before granting Allied's motion to dismiss, Allied contends, conviction under a second indictment for the same offense is unconstitutional.
>
> In *Finch v. United States,* 433 U.S. 676, 97 S.Ct. 2909, 53 L.Ed.2d 1048 (1977), on which Allied relies, the Supreme Court held that the double jeopardy clause prevented the government from appealing a dismissal entered after the district court had received an agreed statement of facts. The district court in *Finch,* however, addressed *factual elements of the crime charged* and based the dismissal on its conclusion that the information against the defendant failed to state an offense. *See United States v. Finch,* 395 F.Supp. 205, 207, 210, 213 (D.Mont.1975). Thus, the dismissal resolved questions determinative of guilt in

favor of the defendant. *See* 433 U.S. at 677, 97 S.Ct. 2909.

> We believe that *Finch* does not require reversal of Allied's conviction. When the district court considered the first indictment against Allied, it received a stipulation agreed to be the only evidence in the case. The court's ruling, however, addressed only Allied's motion to dismiss that indictment for lack of jurisdiction. The court touched on none of the merits of the charge. *Because the ruling did not resolve in the defendant's favor any factual element of the offense charged,* the government could rectify the deficiency in its original case and proceed to trial on a new indictment *even though the district court had received evidence* under the first indictment.... Dismissal of an indictment for failure to show jurisdictional facts cannot bar prosecution under a good indictment.... We therefore hold that trial on the second indictment did not subject Allied to double jeopardy.

*Id.* at 616 (emphases added) (citations omitted).

■ In this case the state court did not resolve "in [Bryant's] favor", *id.,* any disputed question of fact, either during trial or on remand, pertaining to the ownership or leasing of the property in question. Nor was there any dispute of fact with regard thereto. Therefore, Bryant was not subjected to double jeopardy when the state trial court, on remand, received testimony concerning, and determined, uncontroverted facts. In addition, because such finding of undisputed facts by the trial court in no way related to any "factual element of the offense charged", *id.,* or to any facts "which implicate ... guilt or innocence" or are material with respect thereto, *United States v. MacDougall* 790 F.2d 1135, 1142 (4th Cir.1986), Bryant's double jeopardy claim cannot prevail.[2]

---

**2.** In *MacDougall,* the controverted underlying facts were material and relevant with regard to "the affirmative defense of double jeopardy." The district court determined those facts without submission to the jury. Writing for the Fourth Circuit, Judge Sprouse concluded that those issues "did not implicate ... appellants' guilt or innocence which a jury must decide, but rather the right of the government to bring the

action itself. Guilt or innocence is immaterial to the disposition of double jeopardy claims." *Id.* at 1142. Therefore, Judge Sprouse held that the trial judge did not commit any error in refusing to submit to the jury the factual questions relating to the double jeopardy defense. *See also* 1 Charles A. Wright Fed.Prac. and Proc. § 194 at 715 (1982) ("There is very little case law, but what there is distinguishes between the

## II.

### Right to Trial by Jury

■ It can perhaps be argued that since the information specifically described the post office as "the real property of the United States", the finding of that latter fact—even though undisputed—needed to be submitted to the jury. However, because the facts relating to the interest of the United States in the post office property are in no way determinative of any essential element of the charged crime, *see Melia v. State*, 5 Md.App. 354, 363–65, 247 A.2d 554 (1968), that argument is without merit.

In *United States v. Johnson*, 718 F.2d 1317 (5th Cir.1983), an essential element of one of the charged offenses was that the defendant "carried a falsely made security in interstate commerce." *Id.* at 1319. The district court charged the jury that the document which the defendant had allegedly so carried was a "security as a matter of law." *Id.* (footnote omitted). The Fifth Circuit panel affirmed. But the majority of the *en banc* Court reversed as to that issue, stressing that "the due process clause 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged' ", *id.* at 1320 (quoting *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970)), and that " 'a judge may not direct a verdict of guilty no matter how conclusive the evidence' ", *id.*, at 1321 (quoting *Connecticut v. Johnson*, 460 U.S. 73, 83, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983) (plurality opinion)). The *en banc* opinion also quoted *Roe v. United States*, 287 F.2d 435, 440 (5th Cir.), *cert. denied*, 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed.2d 29 (1961) as follows: " '[N]o fact, even an undisputed fact, may be determined by the Judge' ". *United States v. Johnson*, 718 F.2d at 1322. *See also United States v. Goetz*, 746 F.2d 705, 708–09 (11th Cir.1984). However, Judge Rubin, writing forcefully for the *en banc* majority in *Johnson*, acknowledged a split in the courts as to that latter point, *id.* at

1322–23, nn. 16 & 17, citing *inter alia* to the Fourth Circuit's contrary view in *United States v. Guy*, 336 F.2d 595, 597 (4th Cir.1964). In *Guy*, in a *per curiam* opinion, the Fourth Circuit wrote:

> Federal officers found a still that had hot spent mash in it, with steam arising from the mash. The still had been to some extent disassembled, whether more so than is necessary between each "run" not being clear from the evidence. But it is clear that all parts necessary to put the still in operation were found at the location, as well as some empty sugar bars and other articles that one might expect to find in the vicinity of a still.
>
> . . . .
>
> [The federal district court] charged the jury that the existence of an unlawful still setup had been proved and that the only question for them to consider ... was whether the defendants had possession, custody or control of such still and ... worked at such distillery.
>
> . . . .
>
> [T]he appellants strongly argue that whether or not the apparatus in question was in fact a still should have been submitted to the jury and take the position that the failure to do so constituted a finding of fact by the court in derogation of the right of the jury to determine what facts have been proved beyond a reasonable doubt. In other words, appellants' position is that the court may not withdraw from determination by the jury any essential fact in the case, even though there is uncontradicted evidence with respect to the existence of such fact. They quote from *United States v. Murdock*, 290 U.S. 389 at page 394, 54 S.Ct. 223, at page 225, 78 L.Ed. 381 (1933) as follows:
>
> > "A federal judge may analyze the evidence, comment upon it, and express his views with regard to the testimony of witnesses. He may advise the jury in respect of the facts, but the decision

issue of guilt or innocence, for which a jury is required, and issues affecting the government's

right to prosecute, for which no jury is needed.") (footnote omitted).

of issues of fact must be fairly left to the jury.

. . . . .

And a number of other similar quotations from other cases are cited in appellants' brief.

But note that the quotation above says that "issues of fact" are for the jury. There can be no "issues of fact" where there is no controversy as to the facts. And there can be no issue as to a fact where credible testimony with respect to it is neither denied nor impeached.

In this case there was no conflicting evidence as to the existence of a still. The court found, rightly, that the fact that certain necessary parts had been temporarily removed and hidden nearby did not convert the apparatus from a still to something else. This was a question of law for the court and the court in effect charged the jury that the temporary removal of these parts (which were found nearby) did not convert the still into something else. And this was no invasion of the province of the jury.

A similar argument was made in *United States v. Jonikas,* 197 F.2d 675 (7th Cir.1952) where the defendant was charged with passing counterfeit bills. The district court charged the jury that the bills were in fact counterfeit, as there was evidence of that fact and no evidence to the contrary, and that the only issue for the jury to decide was whether the defendants knew that they were counterfeit. The circuit court held that it was proper for the court in its charge "to assume the existence of facts, the existence of which is undisputed or proved beyond controversy."

In *Malone v. United States,* 238 F.2d 851 (6th Cir.1956) at page 852 the court said: "However, the Schwachter case pointed out that, when a fact is not made an issue by defendant and it is shown without controversy by the evidence, the trial judge does not commit reversible error in stating that fact to the jury."

To the same effect *see United States v. Mura,* 191 F.2d 886 (2d Cir.1951); *United States v. Rainone,* 192 F.2d 860 (2d Cir.1951); and *Lyons v. United States,* 325 F.2d 370 (9th Cir.1963).

As these cases hold, an instruction which assumes an admitted or uncontroverted fact cannot be held to be erroneous.

*Id.* at 596–97.

In sum, in *Guy,* the Fourth Circuit affirmed the trial judge's jury instruction concerning the existence of an undisputed fact which was an essential element of the crime charged. This Court is bound by *Guy.* Thus, even if any fact relating to the ownership of the Valley Lee Post Office, the interest of the United States therein, or the date of acquisition of such interest involved any essential element of the storebreaking offense, Bryant had no federal constitutional right, under *Guy,* to have those factual issues submitted to the jury, since they were uncontroverted.

■■■ Also, herein, there is another reason why the trial court was not required to submit the remanded issues to a jury, namely, that the factual determinations on remand went only to jurisdiction, not to guilt or innocence. Where the determination of fact does "not affect the question of defendants' guilt or innocence" but rather only "the right of the court to hold their persons for trial[, such determination] was necessarily preliminary to that trial." *Ford v. United States,* 273 U.S. 593, 606, 47 S.Ct. 531, 535, 71 L.Ed. 793 (1927). Where there is a question of "'acceptance of jurisdiction, over the land'" involved, there is no "factual issue [for submission] to the jury." *United States v. Jones,* 480 F.2d 1135, 1138 (2nd Cir.1973). Rather, that is a question for determination "as a matter of law". *Id.* If there is a factual dispute as to "whether the offense was committed on land determined by the court to be within the special territorial jurisdiction of the United States," that question is for the jury. *Id.*[3] Herein, the trial court,

---

**3.** *See also United States v. Cook,* 922 F.2d 1026, 1031 (2nd Cir.1991) ("In cases where the exercise of federal jurisdiction over a geographic area is necessary to vest jurisdiction in the federal courts, the court may determine as a matter of law the existence of such jurisdiction."); *U.S.*

albeit on remand, rather than prior to trial, determined facts only with respect to when the owner of the post office property and when the United States Government as lessee acquired their respective interests in that property. Those factual determinations provided the underpinning for the trial court's ruling as a matter of law that, under the applicable statutes, it possessed concurrent jurisdiction over the crime in question if the latter was committed, as the jury had found at trial, within the Valley Lee Post Office. In this litigation, there was no factual dispute as to *where* the offense was committed. Accordingly, there was no jury trial right in this case of which Bryant was deprived.

### III.

### *Conclusion*

For the reasons set forth in this opinion, this Court, in a separate Order, will deny Bryant's pending petition for federal habeas corpus relief. This Court thanks Mr. Sykes, Mr. Herr and Ms. Chai for their thorough, excellent representation of the petitioner, as his court-appointed counsel, and requests them to make certain that if Bryant desires to file an appeal to the United States Court of Appeals for the Fourth Circuit, they will aid him in timely so doing.

*v. Gipe,* 672 F.2d 777, 779 (9th Cir.1982) ("the court may determine as a matter of law the existence of federal jurisdiction over the geographic area, but the locus of the offense within that area is an issue for the trier of fact"); *United States v. Deon,* 656 F.2d 354, 357 (8th Cir.1981) (holding that where "the jury was not told that, as a matter of law, an offense had occurred, only that the site of the *alleged* offense ... was in Indian country [,] [t]his instruction, reduced to its essentials, finds as a matter of law only that [the property in question] is in Indian country [and] ... did not overstep the rightful province of the jury"). *State v. Jones,* 51 Md.App. 321, 443 A.2d 967 (1982) is not to the contrary. " '[W]hat are the boundaries is a question of law, and where the boundaries are is a question of fact.' *Rusha v. Little,* 309 A.2d 867, 869 (Me.1973). Thus, after deciding that a state has jurisdiction, the court may give to the jury the question of where the crime actually occurred when the facts are in dispute. *See State v. Batdorf,* 293 N.C. 486, 238 S.E.2d 497 (1977)." *Id.,* 51 Md.App. at 326 n. 4, 443 A.2d 967.