**UNITED STATES of America, Appellee,**

v.

**Alberto HERNANDEZ–FUNDORA, Defendant–Appellant.**

**No. 1073, Docket 93–1632.**

United States Court of Appeals, Second Circuit.

Argued March 17, 1994.

Decided Feb. 14, 1995.

Amended June 22, 1995.

Certiorari Denied June 5, 1995.

See 115 S.Ct. 2288.

---

8. Because we reverse on the 404(b) error, we decline to reach the other issues raised by Aguilar–Aranceta.

William P. Fanciullo, Albany, NY, for defendant-appellant.

George A. Yanthis, Asst. U.S. Atty. for the N.D. of N.Y., Albany, NY (Gary L. Sharpe, U.S. Atty. for the N.D. of N.Y., Albany, NY, of counsel), for appellee.

Before: MAHONEY, WALKER, and SPROUSE,* Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant Alberto Hernandez–Fundora appeals from a judgment of conviction entered September 13, 1993 in the United States District Court for the Northern District of New York, Thomas J. McAvoy, *Chief Judge,* that convicted Hernandez–Fundora, following a jury trial, of assault within the special maritime and territorial jurisdiction of the United States in violation of 18 U.S.C. §§ 113(c) and 7(3). Hernandez–Fundora argues on appeal that: (1) this criminal prosecution for assault following his punishment for that assault by prison officials violates double jeopardy; and (2) the jurisdictional element of the offense for which he was convicted was (a) not supported by legally sufficient evidence (which was improperly admitted), and (b) improperly removed from the jury by the trial court's instruction directing the jury that if they found beyond a reasonable doubt that the assault occurred at Raybrook Federal Correctional Institution ("Raybrook"), the jurisdictional element was satisfied. Hernandez–Fundora also challenges his sentence on the grounds that: (1) he was erroneously denied a reduction of offense level for acceptance of responsibility pursuant to USSG § 3E1.1; and (2) the four level enhancement for use of a dangerous weapon pursuant to USSG § 2A2.2(b)(2)(B) constituted impermissible "double counting."

We agree with Hernandez–Fundora's "double counting" contention, but reject his other arguments. We accordingly vacate the judgment of conviction and remand for resentencing.

### Background

On September 8, 1992, while he was incarcerated at Raybrook pursuant to a detainer filed by the Immigration and Naturalization Service, Hernandez–Fundora struck Bradley Parris, another Raybrook inmate, in the face with a table leg, breaking Parris' jaw. Dur-

* The Honorable James M. Sprouse, United States Circuit Judge for the Fourth Circuit, sitting by designation.

ing a September 17, 1992 interview with an FBI agent, Hernandez–Fundora admitted hitting Parris with the table leg, but asserted that he had done so because Parris had on more than one occasion sprayed Hernandez–Fundora's cell with chemicals, causing Hernandez–Fundora to become sick. Following this incident, Hernandez–Fundora was placed in a special housing unit at Raybrook for "disciplinary segregation" pursuant to 28 C.F.R. § 541.21. He received at least forty-five days of disciplinary segregation based upon the September 8, 1992 assault and the concomitant destruction of property (i.e., breaking the leg off the table).[1]

On January 22, 1993, a grand jury returned an indictment charging Hernandez–Fundora with assault within the special maritime and territorial jurisdiction of the United States in violation of 18 U.S.C. §§ 113(c) and 7(3), based upon this incident. The jury trial commenced before Judge McAvoy on June 16, 1993. At trial, Parris testified that he had been hit in the face with a table leg by Hernandez–Fundora, and that he had never sprayed chemicals in Hernandez–Fundora's cell. He also testified on cross-examination that he had never been in Hernandez–Fundora's cell.

Hernandez–Fundora testified in his own behalf and admitted that he had hit Parris with the table leg, but maintained that Parris, in the course of his work in the safety department at Raybrook, had been spraying Hernandez–Fundora's cell room with chemicals that had made Hernandez–Fundora sick. Hernandez–Fundora testified that he hit Parris with the table leg only in order to get Parris to stop spraying Hernandez–Fundora's cell with chemicals.

The jury returned a guilty verdict on June 17, 1993. The district court sentenced Hernandez–Fundora principally to the statutory maximum term of sixty months imprisonment, with credit for time served from the date of the incident, September 8, 1992.

This appeal followed.

## Discussion

We address in turn the arguments by Hernandez–Fundora that have been described at the outset of this opinion.

### A. *The Double Jeopardy Claim.*

Prior to trial, Hernandez–Fundora moved to dismiss the indictment on the ground that proceeding with the prosecution would violate his constitutional right not to be punished twice for the same offense, i.e., the attack on Parris. *See* U.S. Const. amend. V. The motion was assigned to Judge Lee P. Gagliardi, who denied the motion by an order entered June 11, 1993, and an accompanying opinion dated June 15, 1993, on the grounds that: (1) "[d]isciplinary segregation is not 'punishment' within the meaning of the Double Jeopardy Clause;" and (2) "[a]ssuming ... that disciplinary segregation is punishment within the context of the [Double Jeopardy Clause], it is not prohibited because Congress intended that separate punishments be imposed for the same act under these circumstances." *United States v. Hernandez–Fundora*, No. 93–CR–20 (CGC), slip op. at 2 (N.D.N.Y. June 15, 1993). Hernandez–Fundora argues on this appeal that: (1) the disciplinary segregation imposed at Raybrook constituted punishment within the meaning of the Double Jeopardy Clause; and (2) Congress did not intend separate punishment in these circumstances.

"The Double Jeopardy Clause provides that no one shall 'be subject for the same offense to be twice put in jeopardy of life or limb.' U.S. Const. amend. V. The Clause protects against both a subsequent prosecution for the same offense after acquittal or conviction as well as multiple punishments for the same offense." *United States v.*

---

1. Hernandez–Fundora "believes" that he was accorded six months of disciplinary segregation, apparently because of his belief that he was allowed out of his cell less frequently for a period of time after he was returned to the general prison population from disciplinary segregation than had previously been the case. The record provided by Raybrook indicates that Hernandez–Fundora received forty-five days of disciplinary segregation—fifteen days for hitting Parris with the table leg and thirty days for destruction of property. The parties agree that he served at least forty-five days of disciplinary segregation.

*McCormick,* 992 F.2d 437, 439 (2d Cir.1993) (collecting cases). It is by now well settled that "punishment" imposed by prison authorities for infractions of prison regulations does not generally bar a subsequent criminal prosecution for the same conduct. *See United States v. Rising,* 867 F.2d 1255, 1259 (10th Cir.1989) ("administrative punishment imposed by prison officials does not render a subsequent judicial proceeding, criminal in nature, violative of the double jeopardy clause") (collecting cases); *Kerns v. Parratt,* 672 F.2d 690, 691–92 (8th Cir.1982) (per curiam) ("[Administrative] proceedings [based upon violation of prison disciplinary rules] do not place an offender in jeopardy for purposes of the double jeopardy clause. It is well-settled that there is no bar to separate criminal prosecution. . . .") (collecting cases); *United States v. Stuckey,* 441 F.2d 1104, 1105–06 (3d Cir.) (per curiam) ("Administrative sanctions imposed by prison officials upon a prisoner following his apprehension in connection with the commission of a crime is not a bar to subsequent prosecution for the crime in a court of competent jurisdiction.") (collecting cases), *cert. denied,* 404 U.S. 841, 92 S.Ct. 136, 30 L.Ed.2d 76 (1971).

■ Hernandez–Fundora proffers a twofold argument to persuade us that the general rule does not apply in the instant case. He argues that *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), teaches that if a particular sanction "serves the goals of punishment," *id.* at 448, 109 S.Ct. at 1902, it constitutes punishment for double jeopardy purposes. He further contends that the sanction imposed in this case constituted punishment because it consisted of "disciplinary segregation" as opposed to administrative detention.

■ We are unpersuaded. *Halper* addressed the issue "whether and under what circumstances a civil penalty may constitute punishment for the purpose of the Double Jeopardy Clause," 490 U.S. at 446, 109 S.Ct. at 1901, and is therefore not precisely on point. However, *Halper* does provide some guidance for analyzing the instant case. *Halper* opined that the civil fine at issue in that case constituted punishment for double jeopardy purposes because of the "tremendous disparity" between the civil penalty and the government's actual damages, *id.* at 452, 109 S.Ct. at 1903–04, and concluded that a sanction that "may not fairly be classified as remedial, but only as a deterrent or retribution" constitutes a punishment for double jeopardy purposes. *Id.* at 449, 109 S.Ct. at 1902. Punitive interests and remedial interests, however, are nowhere so tightly intertwined as in the prison setting, where the government's remedial interest is to maintain order and to prevent violent altercations among a population of criminals. Accordingly, the mere fact that a sanction imposed by prison officials has a punitive component does not mean that the sanction constitutes "punishment" for double jeopardy purposes. In this context, we perceive no distinction of constitutional significance between "disciplinary segregation" pursuant to 28 C.F.R. § 541.21 and "[a]dministrative detention" pursuant to *id.* § 541.22.

Subsequent to *Halper,* the question whether disciplinary segregation bars a subsequent prosecution was recently addressed by the Third Circuit, which concluded that: "Disciplinary sanctions imposed by prison authorities for infractions of prison regulations do not bar a subsequent criminal prosecution." *United States v. Newby,* 11 F.3d 1143, 1144 (3d Cir.1993) (citing *Rising,* 867 F.2d at 1259; *Kerns,* 672 F.2d at 691–92; *Stuckey,* 441 F.2d at 1105–06), *cert. denied,* —— U.S. ——, —— U.S. ——, 114 S.Ct. 1841, 115 S.Ct. 111, 128 L.Ed.2d 468, 130 L.Ed.2d 58 (1994). The disciplinary sanctions imposed upon the defendant in *Newby* consisted of disciplinary transfer, disciplinary segregation, and the loss of one thousand days of "good time credits." *Newby,* 11 F.3d at 1145. Although *Newby* does not explicitly address the distinction between administrative detention and disciplinary segregation, the punishment at issue in *Newby* falls within the latter category, and was punitive in nature. *Cf. Russell v. Scully,* 15 F.3d 219, 222 (2d Cir. 1993) (distinguishing administrative and punitive segregation). *Newby* reasoned that "prison disciplinary proceeding[s] . . . determine whether prison rules are broken and . . . maintain institutional order," and accord-

ingly do not bar subsequent criminal prosecutions for the same conduct. *Newby,* 11 F.3d at 1145. We find this reasoning persuasive.

■ In applying the teachings of *Halper* to this issue, *Newby* described the government's remedial interest in the prison context as: "to encourage good conduct and to maintain order in the prison, given that the prison is a place where good order and discipline are paramount because of the concentration of convicted criminals." *Id.* Thus, the fact that remedial concerns require "punishing" individuals for violent or other disruptive conduct does not mean that the sanctions imposed constitute "punishment" for double jeopardy purposes. Rather, as *Newby* concluded its discussion of this issue:

> [A]s a general rule a prison disciplinary sanction does not bar subsequent criminal prosecution. The disciplinary sanctions imposed in this case are not so grossly disproportionate to the remedial goal of maintaining order and discipline in the prison as to constitute a punishment within the meaning of the Double Jeopardy Clause as interpreted in *Halper.*

*Id.* at 1146.

Further, *McCormick* teaches that if Congress intended multiple punishments to flow from a single act, " 'then for the purposes of Double Jeopardy analysis the combined punishment would simply be viewed as the appropriate punishment,' " and not limited by the Double Jeopardy Clause. *McCormick,* 992 F.2d at 440 (quoting *United States v. Koonce,* 945 F.2d 1145, 1150 (10th Cir.1991), *cert. denied,* 503 U.S. 994, 998, 112 S.Ct. 1695, 1705, 118 L.Ed.2d 406, 413 (1992)). 18 U.S.C. § 4042(3) directs the Bureau of Prisons to "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 28 C.F.R. § 541.21 sets forth one such means of disciplining prisoners, disciplinary segregation, defined as "the status of confinement ... in a special hous-

ing unit ... separated from the general population."

Congress could hardly have intended that only those violations of prison regulations that do not rise to the level of criminal behavior come within prison officials' duty to maintain prison discipline, while more heinous behavior is beyond their reach except at the cost of precluding subsequent criminal prosecution. *Cf. Pagliaro v. Cox,* 143 F.2d 900, 901 (8th Cir.1944) ("It would be a strange anomaly if a mere infraction of prison rules would be a basis for forfeiture [of good time] while commission of a serious crime while in custody and in respect to such custody could not be.").

■ Accordingly, subsequent prosecutions will be barred only in those exceedingly rare circumstances where the disciplinary sanction imposed is grossly disproportionate to the government's interest in maintaining prison order and discipline. Applying this standard to Hernandez–Fundora, we conclude that forty-five days of disciplinary segregation was sufficiently related to the government's remedial interest that it did not constitute punishment for double jeopardy purposes.

## B. *The Jurisdictional Claim.*

The statute pursuant to which Hernandez–Fundora was prosecuted, 18 U.S.C. § 113(c), provides:

> Whoever, *within the special maritime and territorial jurisdiction of the United States,* is guilty of an assault shall be punished as follows:
>
> . . . .
>
> (c) Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by fine of not more than $1,000 or imprisonment for not more than five years, or both.

*Id.* (emphasis added).

■ The evidence on the question whether Raybrook was "within the special maritime and territorial jurisdiction of the United States" [2] was elicited from F.B.I. agent Ar-

---

2. The federal enclave laws are a group of statutes that permits the federal courts to serve as a forum for the prosecution of certain crimes

when they occur within the '[s]pecial maritime and territorial jurisdiction of the United States', 18 U.S.C. § 7; this jurisdiction in-

thur Zarone on his direct examination in the following exchange:

Q. Just briefly, what are your duties as an FBI agent?

A. I investigate violations of federal law in our area, three counties in the Northern District.

Q. Does your jurisdiction include Raybrook Federal Prison, Raybrook, New York?

A. Yes, it does.

Q. Okay. Is that federal property there, the Raybrook federal property?

A. Yes. It's under concurrent jurisdiction; the Federal Government has a deed to the property, and both the Federal Government and State Government have concurrent jurisdiction.

MR. FANCIULLO: Objection to that as hearsay, your Honor.

THE COURT: Overruled.

Zarone was subsequently called as a witness on the government's rebuttal case. The following testimony and colloquy ensued on his recross-examination:

Q. Just a couple of questions about something you said earlier.

Have you ever seen a deed to Raybrook?

A. Yes, sir, I have.

Q. And that's a document that exists?

A. Yes, sir, it is.

Q. And do you have it with you?

A. No, sir, I don't keep it with me.

MR. FANCIULLO: I am going to object to the testimony on that area, you Honor, as hearsay and no foundation for it.

MR. YANTHIS: This is beyond rebuttal here.

MR. FANCIULLO: Can we approach?

THE COURT: Yeah.

(At side bar:)

MR. FANCIULLO: It goes to the issue of federal jurisdiction. The only evidence is that he has seen a deed, and I say that's not good enough.

THE COURT: No. He testified that he knew that the premises where the event occurred was in the concurrent jurisdiction of the Federal and State Government. Now, where he got that knowledge might have been from a deed. Somebody might have told him that. It might have come from a hearsay statement.

But Mr. Yanthis didn't ask him what did somebody tell you about the jurisdiction. He got his knowledge from some source. I don't know where it was.

MR. YANTHIS: Yes. He mentioned that he had seen the deed.

THE COURT: Maybe he did. I don't remember. So, I am going to overrule your objection.

As appears from the foregoing, Hernandez–Fundora objected to Zarone's testimony on the jurisdictional issue initially on the basis that it was hearsay, subsequently reiterating that objection and adding that there was "no foundation for it." On appeal, he reiterates these claims, and adds that (1) the best evidence rule was violated and (2) "[t]he testimony only referred to the day of the trial, not the day of the assault."

We have addressed similar testimony, and similar objections, in a number of cases. In *United States v. Sliker,* 751 F.2d 477 (2d Cir.1984), *cert. denied,* 470 U.S. 1058, 471 U.S. 1137, 105 S.Ct. 1772, 105 S.Ct. 2679, 84 L.Ed.2d 832, 86 L.Ed.2d 697 (1985), the defendants were charged, *inter alia,* with bank embezzlement, bank larceny, and falsification of bank records. It was an essential element of these crimes that the victim bank be insured by the Federal Deposit Insurance Corporation (the "FDIC"). *Id.* at 483.

The only evidence provided on this issue was the testimony of a bank officer that the bank's deposits "are" FDIC insured. *Id.* We ruled that the best evidence rule, Fed. R.Evid. 1002, did not require that the relevant insurance policy be placed in evidence, because "the proof required was proof of the fact of insurance and not of the contents of a

___

cludes federal land, and property such as federal courthouses and military bases.

*United States v. Markiewicz,* 978 F.2d 786, 797 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1065, 122 L.Ed.2d 369 (1993).

writing." *Id.; see also United States v. Jones*, 958 F.2d 520, 521 (2d Cir.1992) ("in [*Sliker*], we held that oral testimony about an insurance policy was properly admitted to prove the existence of insurance, in contrast to proving the terms of the policy"). So here, testimonial evidence could be used to prove the federal status of Raybrook, as distinguished from the terms of the deed establishing that status.

■ The hearsay objection to the admissibility of Zarone's testimony on this issue also does not withstand analysis. Zarone was not essentially testifying as to the substance of the out-of-court "statement," *see* Fed.R.Evid. 801(c), represented by the deed that established concurrent federal jurisdiction over Raybrook. Rather, he was testifying to an overall conclusion that Raybrook was "under concurrent jurisdiction." *Cf. Sliker*, 751 F.2d at 483 (testimony establishing overall conclusion of FDIC insurance). This testimony was presumably based, *inter alia*, upon the commonplace knowledge that a federal prison is likely to be a location where federal jurisdiction is at least concurrently exercised. *Cf. Sliker*, 751 F.2d at 485 (invoking " 'common knowledge of the nearly universal prevalence of the banks of the United States having their deposits insured by the [FDIC]' " (quoting *Cook v. United States*, 320 F.2d 258, 259–60 (5th Cir.1963)).

■ Nor do we perceive on this record any reason to conclude that Zarone lacked adequate personal knowledge to testify to Raybrook's concurrent federal status. *See* Fed.R.Evid. 602 (establishing requirement of personal knowledge). We note also that this ground of objection was not expressed at the time Zarone's testimony on this issue was admitted. *See* Fed.R.Evid. 103(a)(1) (timely objection required).

■ We turn to the issue of the sufficiency of the evidence of concurrent federal jurisdiction. Having concluded that Zarone was a competent witness on this issue, and in view of his uncontradicted testimony that concurrent federal jurisdiction existed, the only remaining sufficiency issue is the claim that his testimony established only the existence of concurrent federal jurisdiction at the time of

trial, rather than at the time of Hernandez–Fundora's assault upon Parris. *Sliker* addressed the parallel claim in that case that no evidence had been provided to establish FDIC insurance at the time of the criminal activity at issue, as distinguished from the time of trial. We responded that "the Government can rely on [the bank officer's] testimony viewed in light of the principle that the subsequent existence of a condition is some evidence of its prior existence, at least when the time span is not too great and there is no suggestion of an intervening circumstance that might call its previous existence into question." *Id.* at 484 (citing 2 Wigmore, *Evidence* § 437(1) at 513–19 (Chadbourne rev. 1979)). We followed *Sliker* on this issue in *United States v. Schermerhorn*, 906 F.2d 66, 69–70 (2d Cir.1990), where the crime charged was making a false statement to a federally insured bank and the evidence of FDIC insurance again consisted of trial testimony by a bank officer that the bank was insured at the time of trial. In light of *Sliker* and *Schermerhorn*, we deem the evidence in this case to be sufficient to infer the existence of concurrent federal jurisdiction over Raybrook at the time of the assault by Hernandez–Fundora upon Parris.

■ Having concluded that the evidence underlying the jurisdictional element was properly admitted and was sufficient, we proceed to address Hernandez–Fundora's contention that the district court erred in removing the jurisdictional element of his offense from the jury's consideration. The court charged the jury that:

[T]he Government must prove the alleged assault took place within the special maritime and territorial jurisdiction of the United States. This simply means that the alleged assault must have occurred in any lands reserved or acquired for the use of the United States and under the exclusive or concurrent jurisdiction thereof. I charge you now that [Raybrook] is a place that falls within the territorial jurisdiction of the United States. Therefore, if you find beyond a reasonable doubt that the acted [sic] alleged occurred at [Raybrook], the sixth element of the offense has been met.

Thus, the court removed from the jury's consideration the issue whether Raybrook was within the special maritime and territorial jurisdiction of the United States, but reserved for the jury the question whether the assault occurred at Raybrook.

This approach is consistent with prior cases in this circuit. In *United States v. Jones*, 480 F.2d 1135 (2d Cir.1973), the defendant was convicted after a jury trial of theft within the special territorial jurisdiction of the United States in violation of 18 U.S.C. § 661. The theft occurred at a Veterans Administration hospital in West Haven, Connecticut. *Jones*, 480 F.2d at 1136. The trial court charged the jury that the hospital was within the special territorial jurisdiction of the United States, and that the jury should determine whether the theft occurred at the hospital. *Id.* at 1138. Responding to the defendant-appellant's argument that the jurisdictional issue had been improperly taken from the jury, we held that "the district court properly determined this question as a matter of law and submitted to the jury the question of whether the offense was committed on land determined by the court to be within the special territorial jurisdiction of the United States." *Id.* at 1138. We concluded that "the court's instruction correctly left the factual element—the locus of the crime—to the jury, while reserving the question of law—whether the federal government had accepted jurisdiction—to itself." *Id.* at 1139.

Similarly, in *United States v. Cook*, 922 F.2d 1026 (2d Cir.), *cert. denied*, 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991), the defendant-appellant was convicted after a jury trial of use and possession of gambling devices in Indian country in violation of 15 U.S.C. § 1175. *Cook*, 922 F.2d at 1029. The trial court had "ruled from the bench that the area at issue was located in Indian country," *id.* at 1030, and had instructed the jury "that it need only decide whether the offenses charged in the indictment [had] occurred." *Id.* at 1031. We concluded that the

court "may determine as a matter of law the existence of such jurisdiction," *id.* (citing *Jones*, 480 F.2d at 1138), and affirmed the conviction. *Id.* at 1037. *See also United States v. Warren*, 984 F.2d 325, 327 (9th Cir.1993) (existence of federal jurisdiction over a geographic area is a legal question, while locus of offense within that area is a factual question for the jury).

The government's brief on appeal cited *Cook* in support of the district court's instruction on the jurisdictional issue, and also cited two cases which addressed or invoked the provisions of Fed.R.Evid. 201. *See United States v. Piggie*, 622 F.2d 486, 487–88 (10th Cir.), *cert. denied*, 449 U.S. 863, 101 S.Ct. 169, 66 L.Ed.2d 80 (1980); *United States v. Blunt*, 558 F.2d 1245, 1247 (6th Cir.1977) (per curiam). Rule 201 provides in pertinent part:

(a) **Scope of rule.** This rule governs only judicial notice of adjudicative facts.

(b) **Kinds of facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

. . . .

(g) **Instructing jury.** In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

■ In his reply brief on appeal,[3] Hernandez–Fundora argues that the court's instruction on the jurisdictional issue amounts to judicial notice that Raybrook falls within the territorial jurisdiction of the United States, but fails to satisfy the mandate of Rule 201(g) to instruct the jury that "it may, but is not required to, accept as conclusive

---

**3.** Arguments raised for the first time in an appellate reply brief are not properly before the court. *See United States v. Gigante*, 39 F.3d 42, 50 n. 2 (2d Cir.1994). In this case, however, Hernandez–Fundora took exception at trial to the challenged jury instruction, and the government raised Rule 201 at least indirectly in its appeal brief. Accordingly, Hernandez–Fundora's argument premised upon Rule 201(g) is proper reply.

any fact judicially noticed." Fed.R.Evid. 201(g). Hernandez–Fundora accordingly contends that even under the government's proposed approach, the jury instruction was deficient and requires reversal. We conclude, however, that resolution of the jurisdictional issue in this case requires the determination of legislative facts, rather than "adjudicative facts" within the meaning of Rule 201(a), with the result that Rule 201(g) is inapplicable.

"Geography has long been peculiarly susceptible to judicial notice for the obvious reason that geographic locations are facts which are not generally controversial...." *Piggie*, 622 F.2d at 488. Thus, courts have taken judicial notice of federal jurisdiction over particular lands where the prosecution has not offered direct evidence on the issue. *See United States v. Lavender*, 602 F.2d 639, 641 (4th Cir.1979) (judicial notice of federal jurisdiction taken at appellate level); *Government of Canal Zone v. Burjan*, 596 F.2d 690, 693–95 (5th Cir.1979) (same); *United States v. Hughes*, 542 F.2d 246, 248 n. 1 (5th Cir.1976) (same, as to military base); *United States v. Anderson*, 528 F.2d 590, 591–92 (5th Cir.) (per curiam) (affirming use of judicial notice to find jurisdiction over federal prison), *cert. denied*, 429 U.S. 837, 97 S.Ct. 105, 50 L.Ed.2d 103 (1976); *United States v. Benson*, 495 F.2d 475, 481 (5th Cir.) (affirming use of judicial notice to find jurisdiction over military base), *cert. denied*, 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 310 (1974).

The question presented in this case is whether, in a criminal case, the disposition of a geographical/jurisdictional issue is premised upon the determination of "adjudicative facts" within the meaning of Rule 201(a), thus bringing into play the procedural requirements of Rule 201(g). The confinement of Rule 201 to notice of "adjudicative facts" was not casually made. The pertinent advisory committee note addresses the question in some detail:

> **Subdivision (a).** This is the only evidence rule on the subject of judicial notice. It deals only with judicial notice of "adjudicative" facts. No rule deals with judicial notice of "legislative" facts....

The omission of any treatment of legislative facts results from fundamental differences between adjudicative facts and legislative facts. Adjudicative facts are simply the facts of the particular case. Legislative facts, on the other hand, are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body. The terminology was coined by Professor Kenneth Davis in his article An Approach to Problems of Evidence in the Administrative Process, 55 Harv.L.Rev. 364, 404–407 (1942).... In addition, see the same author's Judicial Notice, 55 Colum.L.Rev. 945 (1955); Administrative Law Treatise, ch. 15 (1958); A System of Judicial Notice Based on Fairness and Convenience, in Perspectives of Law 69 (1964).

Fed.R.Evid. 201 advisory committee's note.

The Eighth Circuit applied this distinction in *United States v. Gould*, 536 F.2d 216 (8th Cir.1976), invoking Professor Davis' *Administrative Law Treatise* and, in reviewing convictions for conspiracy to import and importation of cocaine, stating that:

> The fact that cocaine hydrochloride is a derivative of coca leaves is a universal fact that is unrelated to the activities of the parties to this litigation. There was no preemption of the jury function to determine what substance was actually seized from Ms. Kenworthy at the Miami airport. The jury was instructed that, if it found that the confiscated substance was cocaine hydrochloride, the applicable law classified the substance as a schedule II controlled substance.

> It is clear to us that the District Court took judicial notice of a legislative, rather than an adjudicative, fact in the present case and rule 201(g) is inapplicable. The District Court was not obligated to inform the jury that it could disregard the judicially noticed fact.

536 F.2d at 220–21; *see also United States v. Coffman*, 638 F.2d 192, 194–95 (10th Cir. 1980) (quoting and following *Gould*, 536 F.2d at 219–21), *cert. denied*, 451 U.S. 917, 101 S.Ct. 1995, 68 L.Ed.2d 309 (1981).

The Fifth Circuit followed *Gould* in a case that bears directly upon the issue presented on this appeal. In *United States v. Bowers*, 660 F.2d 527 (5th Cir. Unit B Sept. 1981) (per curiam), the court affirmed a conviction for cruelty to a child in violation of a Georgia statute pursuant to the Assimilative Crimes Act, 18 U.S.C. § 13, which applies local criminal law in the special maritime and territorial jurisdiction of the United States. In doing so, the court rejected an argument by the defendant-appellant premised upon Rule 201(g), as follows:

> Appellant asserts that the court committed reversible error in taking judicial notice that "Fort Benning, Georgia, is on land which is property of the United States and is under the jurisdiction of [the] United States." Record, vol. 2, at 173, 181. The alleged vice in this instruction is the court's failure to inform the jurors that they were not bound to accept the noticed fact. Appellant cites Fed.R.Evid. 201(g), which states:

>> In a criminal case, the Court shall instruct the jury that it may, but is not required[,] to accept as conclusive any fact judicially noticed.

> Rule 201 "governs only judicial notice of adjudicative facts," Fed.R.Evid. 201(a), and not legislative facts. Consequently, appellant's argument turns on the characterization of the fact judicially noticed. The Eighth Circuit has observed that

>> Legislative facts are established truths, facts or pronouncements that do not change from case to case but apply universally, while adjudicative facts are those developed in a particular case.

> *United States v. Gould*, 536 F.2d 216, 220 (8th Cir.1976). The fact that Fort Benning is under federal jurisdiction is a well established fact appropriate for judicial notice. *United States v. Benson*, 495 F.2d 475, 481–82 (5th Cir.), *cert. denied*, 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 310 (1974). Unlike an adjudicative fact, this fact does not change from case to case but, instead, remains fixed. Consequently, the court committed no error in failing to instruct

> the jury it could disregard the judicially noticed fact.

660 F.2d at 530–31.

Professor Davis has also addressed this issue very recently, stating:

> Whether 123 C Street is inside or outside the city is a question about 123 C Street, not about a party. The question whether X lives in the city is a question of adjudicative fact, but, even though X lives at 123 C Street, the fact that that address is within the city is not an adjudicative fact.

II Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 10.6, at 155 (3d ed. 1994) ("Davis & Pierce").

These authorities clarify that while courts may take judicial notice of either legislative or adjudicative facts, only notice of the latter is subject to the strictures of Rule 201. Although Rule 201 is frequently (albeit erroneously) cited in cases that involve judicial notice of legislative facts, *see* II Davis & Pierce § 10.6, at 155, we recognize the importance of this distinction and its clear basis in Rule 201(a) and the advisory note thereon, as explicated in *Gould* and *Bowers*. We therefore conclude that the jurisdictional issue in this case is premised upon a determination of legislative, rather than adjudicative, facts to which Rule 201, including Rule 201(g), is inapplicable.

■ Following our decisions in *Jones* and *Cook*, we accordingly rule that the district court was entitled to determine that Raybrook falls within the special maritime and territorial jurisdiction of the United States, and to remove that issue from consideration by the jury. As in *Jones* and *Cook*, any factual issues whose resolution is necessary to a determination of such a geographical/jurisdictional issue would invoke judicial notice of legislative facts to which Rule 201 is inapplicable; i.e., in the language of the advisory committee's note to Rule 201(a), facts "which have relevance to legal reasoning ... in the formulation of a legal principle or ruling by a judge or court."

## C. *The Sentencing Issues.*

Hernandez–Fundora's offense level was calculated by starting with the aggravated

assault base offense level of fifteen, *see* USSG § 2A2.2(a), and adding three levels for the degree of injury sustained by Parris, *see id.* 2A2.2(b)(3)(D), and four levels for the use of a dangerous weapon. *See id.* § 2A2.2(b)(2)(B). The resulting total offense level of twenty-two combined with Hernandez–Fundora's criminal history category IV to produce a guideline sentencing range of sixty-three to seventy-eight months. He was sentenced to the statutory maximum term of five years. *See* 18 U.S.C. § 113(c).

█ Hernandez–Fundora argues, and the government concedes, that our decision in *United States v. Hudson,* 972 F.2d 504, 506–07 (2d Cir.1992), precludes the four-level enhancement pursuant to USSG § 2A2.2(b)(2)(B) ("if a dangerous weapon … was otherwise used, increase by 4 levels") if the use of the non-inherently dangerous weapon which provided the basis for the enhancement also formed the basis for characterizing the assault as aggravated. *See* USSG § 2A2.2, comment. (n.1) (" 'Aggravated assault' means a felonious assault that involved (a) a dangerous weapon with intent to do bodily harm …, or (b) serious bodily injury, or (c) an intent to commit another felony."). In *Hudson,* we stated that:

> The incremental adjustment schedule of § 2A2.2 … is, therefore, only appropriate for situations involving inherently dangerous weapons.... Where an ordinary object is implicated, as was the case here [a car], it is the *use* of the object as a weapon that makes the offense an aggravated assault, and it is the *use* of this weapon which also requires a four-level enhancement pursuant to U.S.S.G. § 2A2.2(b). This two-fold upward adjustment for the use of a weapon constitutes impermissible double counting. *See, e.g., United States v. Campbell,* 967 F.2d 20, 23–26 (2d Cir. 1992).

972 F.2d at 507.

Accordingly, the table leg used by Hernandez–Fundora, like the car in *Hudson,* cannot be employed to further enhance Hernandez–Fundora's sentence beyond characterizing the assault as aggravated. Although Hernandez–Fundora did not raise this issue below, we conclude (and the government con-

cedes) that the double counting amounts to "plain error" that warrants appellate relief. *See Hudson,* 972 F.2d at 506–07 (vacating and remanding for resentencing although issue not raised below). Without the four level enhancement, Hernandez–Fundora's total offense level would be eighteen and his guideline range would be forty-one to fifty-one months. Thus, the five-year sentence imposed upon Hernandez–Fundora exceeds the guidelines range for his offense. *Cf. United States v. Keppler,* 2 F.3d 21, 24 (2d Cir.1993) (if defendant could have received same sentence without error, error does not amount to "plain error").

█ Hernandez–Fundora also contends that because he admitted the attack on Parris, both at trial and to Zarone shortly after the incident, the district court erred in denying him a three-level reduction in his offense level for acceptance of responsibility pursuant to USSG § 3E1.1. The court concluded that although Hernandez–Fundora had admitted his conduct, he had not accepted responsibility for his wrongdoing. The court stated in this regard:

> [A]cceptance of responsibility entails more than just admitting that certain conduct was committed. It also entails the concept that that conduct was wrong, violative of the law and that the individual accept the idea that he now has to be punished for it. Clearly, your client hasn't done that, so the Court is going to decline to give him a three-point downward departure.

The district court's view accords with the law of this circuit, *see United States v. Cousineau,* 929 F.2d 64, 69 (2d Cir.1991), and we perceive no basis to disturb the court's assessment of the underlying facts. *See id.*

## Conclusion

The judgment of conviction is vacated and the case is remanded for resentencing.