Appellant, Corbley Duke, Jr., is challenging his conviction[1] and sentencing[2] in the Fulton County Court of Common Pleas for the crime of escape, a violation of R.C. 2921.34. He presents two assignments of error for consideration that are:
 "ASSIGNMENT OF ERROR NO. 1 THE TRIAL COURT'S INTERPRETATION AND APPLICATION OF R.C. CHAPTER 2921 WAS CONTRARY TO LAW AND THE MANIFEST WEIGHT OF THE EVIDENCE.
 "ASSIGNMENT OF ERROR NO. 2 THE TRIAL COURT'S CONVICTION AND SENTENCE OF APPELLANT FOR THE CRIME OF ESCAPE IS BARRED BY THE DOUBLE JEOPARDY CLAUSE UNDER BOTH THE OHIO AND UNITED STATES CONSTITUTIONS."
The record shows that beginning on November 21, 1997, appellant was a participant in a home monitoring program at the Corrections Center of Northwest Ohio ("CCNO") following his conviction and sentencing for domestic violence. A CCNO official testified that she gave appellant the written rules of the program, explained the rules to him and offered to answer any questions he had about the rules. After appellant said he understood the rules and signed the required papers, she put an electric monitoring bracelet around appellant's ankle. She then drove appellant to his parents' home in Swanton, Ohio, where he had agreed to live during the term of his sentence, and installed a special device on a phone line there to alert CCNO if appellant tampered with or removed the electronic monitoring bracelet. Thereafter, she met with appellant at CCNO once a week to set his schedule for that week regarding times he was permitted to leave his parents' home for work.
On the week in question, appellant was allowed to leave the home from 8:00 a.m. to 8:00 p.m. each day. In addition to the requirement that he not leave his parents' home without express permission from CCNO officials, appellant was also ordered by the court not to contact his former girlfriend and not to drink alcohol.
On February 13, 1998, appellant violated all of his requirements. He started by contacting his former girlfriend. Next, he drank alcohol. His mother learned about his actions and got into an argument with him. At around 11:30 p.m., he told her he could not take it anymore and that he wanted to just serve out the rest of his sentence in jail. He cut the electric monitoring bracelet off his ankle and left his parents' house after telling his mother he was going to a local bar to have another drink before the police came to get him.
He did go to the bar, but he was turned away because the police had already called there looking for him. He went to a local grocery store, bought a twelve-pack of beer and started drinking from one can while standing in the alley beside the store.
Officials from CCNO called appellant's parent within ten minutes from the time he removed the electronic monitoring bracelet from his ankle. After they spoke with his mother, the officials called the local police to report appellant had escaped. A police officer from the Swanton Police Department found appellant in the alley by the grocery store and arrested him. The officer took appellant directly to CCNO.
Officials at CCNO filed administrative charges against appellant for violating disciplinary rules by removing the electronic monitoring bracelet and leaving his parents' home. A hearing officer ruled that appellant was guilty of escape or attempted escape and ordered that appellant serve ten days of his sentence in solitary confinement. The punishment imposed by the hearing officer did not add to the number of days appellant was serving in jail pursuant to the court-ordered sentence for his initial domestic violence conviction.
The trial court ordered appellant to serve the remainder of his original one hundred eighty-two day sentence for domestic violation at CCNO, rather than at home under electronic monitoring. Finally, appellant was charged with separate time of escape, and, as we have previously noted, the Fulton county Court of Common Pleas found him guilty of the charge.
In support of his first assignment of error, appellant begins by arguing that he was not in detention as that term is defined in R.C. 2921.01(E), so he cannot be guilty of escape, which is a breaking of detention. Appellant says the definition of detention fails to mention electronic monitoring, so persons home wearing electronic monitoring bracelets are not in detention.
At the time appellant was charged with escape, R.C. 921.01(E) and (F) defined detention and detention facility as follows:
 "(E) 'Detention' means arrest; confinement in any vehicle subsequent to an arrest; confinement in any facility for custody of persons charged with or convicted of crime or alleged or found to be a delinquent child or unruly child; hospitalization, institutionalization, or confinement in any facility that is ordered pursuant to or under the authority of 2945.37, 2945.371 [2945.37.1], 2945.38, 2945.39, or 2945.40 of the Revised Code; confinement in any vehicle for transportation to or from any such facility; detention for extradition or deportation; except as provided in this division, supervision by any employee of any such facility that is incidental to hospitalization, institutionalization, or confinement in the facility but that occurs outside the facility; or supervision by an employee of the department of rehabilitation and correction of a person on any type of release from a state correctional institution other that release on parole or shock probation. For a person confined in a county jail who participates in a county jail industry program pursuant to section 5147.30 of the Revised Code, 'detention' includes time spent at as assigned work site and going to and from the work site. Detention does not include supervision of probation or parole, or constraint incidental to release on bail.
 "(F) 'Detention facility' means any place used for the confinement of a person charged with or convicted of any crime or alleged or found to be a delinquent child or unruly child." (effective 8-23-95).
The Second and Third District Courts of Appeals considered these definitions in cases similar to the case at bar, and concluded that the definitions did apply to persons confined at home with electronic monitoring. State v. Long (1992), 82 Ohio App.3d 168,170-171; State v. Luikart (May 8, 1996), Marion App. No. 9-95-57, unreported. As the Second District Court of Appeals explained:
 "It is clear from a reading of the above statutes that EMHA [electronic monitored house arrest] is a form of detention, as it constitutes confinement in a facility for custody of persons convicted of a crime. R.C. 2921.01(E), (F). Through the agreement made between the court and a defendant, the home becomes for these purposes the detention facility. The fact that defendant is temporarily released from the facility for specific purposes does not remove it from that definition. A defendant on EMHA knows he is the subject of detention within the specified area and at the specified times. When a defendant on EMHA leaves or otherwise interferes with the electronic monitoring device for the purpose of breaking his detention, he has committed the offense of escape." State v. Long, 82 Ohio App.3d at 170-171.
We agree with the reasoning of the Second and Third District Courts of Appeal and find that the trial court in this case did not err when it ruled that the definition of detention encompasses persons who are confined at home with electronic monitoring following their conviction and sentencing for a crime.
Appellant next argues that even if he was in detention, he did not break detention, as required in R.C. 2921.34, for a conviction for escape. Appellant says he never intended to leave detention, he just wanted to change the form of his detention i.e. return to jail rather than remain at his parents' house under electronic monitoring. Appellant says, therefore, that he lacked the required intent for escape. He also says that he did not act purposely to break detention because his intent was to be re-incarcerated.
As the Second District Court of Appeals has noted: "The culpable mental state required for the crime of Escape is a purposeful act; that is, one performed with a specific intent to cause a certain result." State v. Frye (Jul. 19, 1996), Clark App. No. 95-CA-17, unreported. The statutory definition found in R.C. 2901.22(A) further explains: "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what theoffender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C.2901.22(A) (Emphasis added). When this standard is applied to the facts in this case, it is clear that appellant acted purposely to break his detention when he cut off his electronic monitoring bracelet and left his parents' home to find and drink alcohol. Appellant knew he did not have permission to take off the bracelet, to leave his parents' home after 8:00 p.m., or to drink alcohol. He purposely did all of those acts. His motive for doing the acts, to be arrested and returned to jail, does not change the purposeful nature of his actions, nor does it change the result — appellant was not under confinement from the time he took the bracelet off his ankle and left his parents' home until the time of his arrest. Therefore, the trial court in this case correctly ruled that the state proved beyond a reasonable doubt that appellant acted purposefully and could be found guilty of escape. Appellant's first assignment of error is not well-taken.
In support of his second assignment of error, appellant argues that his conviction for escape is barred by the double jeopardy protections found in our state and federal constitutions. Appellant contends that he was already punished for his actions when he was found guilty of disciplinary rule violations in an administrative proceeding at CCNO and was ordered to spend ten days in solitary confinement. He says he was also already judicially punished when the trial court rescinded its permission for him to be in the electronic monitoring program and returned him to jail for the remainder of his original sentence for his conviction for domestic violence.
Appellant is correct in his assertion that the double jeopardy protections found in both the state and federal constitutions apply to prevent "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." State v. Gustafson (1996), 76 Ohio St.3d 425,432. However, he is not correct in his assertion that the administrative proceedings at CCNO or the trial court's order that he serve out the remainder of his sentence for domestic violence at CCNO rather than at home on electronic monitoring instituted "punishment" that triggered the double jeopardy protections. In neither instance was his original sentence for domestic violence lengthened. Rather, in both instances the nature of how he served that sentence was changed. These changes do not constitute "punishment" for double jeopardy purposes.
In reaching our conclusion, we considered cases from several federal districts where prisoners raised claims similar to that raised by appellant. In the federal cases, the prisoners alleged the sanctions imposed upon them administratively for disciplinary rule violations in prison were punishment that triggered double jeopardy protections and barred further prosecution for the actions that were ruled violations of the disciplinary rules. See, e.g. United States v. Galan (C.A.5, 1996), 82 F.3d 639; United States v. Brown (C.A.9, 1995), 59 F.3d 102; United States v. Hernandez-Fundora (C.A.2, 1995),58 F.3d 802; Garrity v. Fiedler (C.A.7, 1994), 41 F.3d 1150;United States v. Newby (C.A.3, 1993), 11 F.3d 1143. In each case, the federal courts rejected the claims. United States v.Galan, 82 F.3d at 640; United States v. Brown,59 F.3d at 103-105; United States v. Hernandez-Fundora,58 F.3d at 806-807; Garrity v. Fiedler, 41 F.3d at 1152-1153; UnitedStates v. Newby, 11 F.3d at 1144-1146. The federal courts noted that the purpose of sanctions for disciplinary rule violations is remedial — to keep order and to encourage good conduct in prison. See, e.g., United States v. Hernandez-Fundora,58 F.3d at 806-807. Furthermore, the sanctions were "not so grossly disproportionate to the remedial goal of maintaining and discipline in the prison as to constitute a punishment within the meaning of the Double Jeopardy Clause * * *." Id. at 807.
The order of the trial court that appellant serve the remainder of his sentence for domestic violence at CCNO was likewise remedial. The order did not lengthen the time of appellant's sentence. The order was designed to ensure that appellant served the time required by his sentence and to ensure that the power of the court would be maintained in society. Accordingly, appellant's second assignment of error is not well-taken.
The judgement of the Fulton County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGEMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J. ------------------------- JUDGE Melvin L. Resnick, J. ------------------------- JUDGE Richard W. Knepper, J. CONCUR. ------------------------- JUDGE
[1] The trial court filed a judgment entry finding appellant guilty of the crime of escape on June 4, 1998.
[2] The trial court filed a judgment entry on June 10, 1998 sentencing appellant to ten months in jail and five years of probation.