# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-3386

_____

United States of America

*Plaintiff - Appellee*

v.

Earl F. Love

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: September 24, 2021
Filed: December 14, 2021

_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Earl F. Love of assault in violation of 18 U.S.C. § 113(a)(6). The district court[1] sentenced him to 84 months in prison, consecutive to a prior sentence. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

---

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

# I.

Love was serving a sentence at the U. S. Medical Center for Federal Prisoners in Springfield, Missouri. He entered the room of another inmate and attacked him, causing severe injuries, emergency intubation, and facial reconstruction surgery. Love was charged with assault resulting in serious bodily injury at a place within the special maritime and territorial jurisdiction of the United States.

At trial, the government requested judicial notice that the United States has special maritime and territorial jurisdiction over the Center. Love countered that the Sixth Amendment required the government to prove this jurisdiction as an element of the offense. During the first day of trial, three witnesses from the Center—a nursing supervisor, a special investigator, and a special investigative supervisor technician—testified about the "federal nature" of the Center. The government presented no other evidence about special maritime and territorial jurisdiction. On the second day, the district court said, based on its extensive historical research about the Center, it would take judicial notice of special maritime and territorial jurisdiction. It denied Love's motions for acquittal on the basis of insufficient evidence of special maritime and territorial jurisdiction. The court instructed the jury that the Center was within special maritime and territorial jurisdiction. The jury convicted. Love appeals, arguing that the district court violated his Sixth Amendment rights by its judicial notice of special maritime and territorial jurisdiction.

For a conviction under 18 U.S.C. § 113(a)(6), the government must prove: (1) an intentional assault of another person (2) who suffered serious bodily injury (3) within the special maritime and territorial jurisdiction of the United States. *Cf. United States v. Stymiest*, 581 F.3d 759, 766 (8th Cir. 2009) (identifying elements of § 113(a)(6) where assault occurred in "Indian country"). This appeal involves only the third element.

The Enclave Clause of the United States Constitution empowers the federal government to acquire land within a state. **U.S. Const. art. I, § 8, cl. 17**; *Paul v. United States*, 371 U.S. 245, 264 (1963). For the United States to exercise jurisdiction over the acquired land, the state must agree to it, and the federal government must accept it. *Paul*, 371 U.S. at 264 (holding that, without state assent to federal jurisdiction, the federal government is "an ordinary proprietor"); *Adams v. United States*, 319 U.S. 312, 314-15 (1943) (holding that federal jurisdiction requires acceptance by the federal government). State agreement may be expressed by consent at the time of acquisition, or by cession of legislative authority after a nonconsensual acquisition. *Kleppe v. New Mexico*, 426 U.S. 529, 542 (1976); *United States v. Brown*, 552 F.2d 817, 820 (8th Cir. 1977). For land acquired before 1940, federal acceptance of jurisdiction is presumed in the absence of contrary evidence. *United States v. Redstone*, 488 F.2d 300, 302 (8th Cir. 1973). For land acquired after 1940, there is a presumption *against* federal acceptance of jurisdiction. *Id.*, *citing* **40 U.S.C. § 255** (enacted 1940) (now **40 U.S.C. § 3112**) (statute requiring the federal government to "indicate acceptance of jurisdiction on behalf of the Government by filing a notice of acceptance with the Governor of the State or in another manner prescribed by the laws of the State where the land is situated").

Love agrees that Missouri consented to federal jurisdiction over the Center. *See* **§ 11072, RSMo 1929** (now **§ 12.010, RSMo 2016**); and **§ 11073, RSMo 1929** (now **§ 12.020, RSMo 2016**). He disputes federal acceptance.

The district court resolved this issue by judicial notice that the Center land was acquired by the federal government before 1940. It gave this instruction:

> The United States Medical Center for Federal Prisoners in Springfield, Missouri is a place that falls within the special maritime and territorial jurisdiction of the United States. Therefore, if you find beyond a reasonable doubt that the act alleged occurred at the United States Medical Center for Federal Prisoners in Springfield, Missouri, the third element of the offense has been met.

II.

Love contends that this instruction deprived him of his right to a jury trial. This court reviews claims of constitutional error de novo. ***United States v. Wessels***, 539 F.3d 913, 914 (8th Cir. 2008).

Because this Circuit has not addressed who decides whether a particular place is "within the special maritime and territorial jurisdiction of the United States," the district court applied *United States v. Hernandez-Fundora*, 58 F.3d 802 (2d Cir. 1995). Like Love, Hernandez-Fundora was convicted under 18 U.S.C. § 113 for attacking another prisoner at a federal correctional institution. ***Hernandez-Fundora***, 58 F.3d at 804. Like here, "the district court took judicial notice that [the institution] fell within the special maritime and territorial jurisdiction of the United States, and therefore instructed the jury that if it found 'beyond a reasonable doubt that the act alleged occurred [there],' the jurisdictional element of the offense had been met." ***United States v. Davis***, 726 F.3d 357, 365 (2d Cir. 2013) (alterations added), *summarizing* ***Hernandez-Fundora***, 58 F.3d at 809. On appeal, Hernandez-Fundora argued that the jurisdictional element was improperly removed from the jury. ***Hernandez-Fundora***, 58 F.3d at 809.

The Second Circuit decided that special maritime and territorial jurisdiction is a question of law:

> [T]o determine whether a crime took place within the special maritime and territorial jurisdiction of the United States requires two separate inquiries: one to determine the "locus of the crime" and one to determine the existence *vel non* of federal jurisdiction. While the former is plainly a factual question for the jury to decide, the latter—turning on a fixed legal status that does not change from case to case and involving consideration of source materials (such as deeds, statutes, and treaties) that judges are better suited to evaluate than juries—has always been treated in this Circuit as a legal question that a court may decide on its own.

***Davis***, 726 F.3d at 368, *summarizing **Hernandez-Fundora***, 58 F.3d at 810. The court added that the legal question of special maritime and territorial jurisdiction "requires the determination of legislative facts, rather than adjudicative facts," relying on this court's definitions. ***Hernandez-Fundora***, 58 F.3d at 811, *quoting **United States v. Gould***, 536 F.2d 216, 220 (8th Cir. 1976). The Second Circuit concluded that because Federal Rule of Evidence 201 applies only to adjudicative facts, a district court need not submit judicially noticed legislative facts to the jury. ***Id.*** at 812. In short, Hernandez-Fundora's Sixth Amendment claim failed because (1) special maritime and territorial jurisdiction is a question of law (2) that turns on legislative facts (3) that need not be submitted to the jury.

Eighth Circuit precedent aligns with each point. First, federal jurisdiction over a particular place is a question of law. Offenses within the Major Crimes Act have a jurisdictional element like the one in 18 U.S.C. § 113(a). For instance, 18 U.S.C. § 1153(a) penalizes Indians who commit certain crimes (including felony assault under section 113) "within the Indian country." Whether a crime is within the Indian country is a bifurcated inquiry: "[I]t is for the court, not the jury, to determine whether that land is in Indian country. This question . . . is analytically distinct from . . . whether the crime in fact occurred on a particular piece of land or within a particular area. The latter question—the location of the crime—is certainly a factual issue for the jury." ***United States v. Stands***, 105 F.3d 1565, 1575-76 (8th Cir. 1997) (alteration added). *Stands* cited *Hernandez-Fundora* for the proposition that "[i]n other factual situations, courts have held that the existence of jurisdiction over crimes committed in a particular geographic area is a question for the court." ***Id.*** at n.7, *citing **Hernandez-Fundora***, 58 F.3d at 809-10. *See also **United States v. Jackson***, 853 F.3d 436, 438 n.2 (8th Cir. 2017) ("The court determines whether a particular piece of land is in Indian country; the jury then decides whether the crime in fact occurred on that land."), *discussing **United States v. Jackson***, 697 F.3d 670 (8th Cir. 2012).

Second, facts that resolve the special maritime and territorial jurisdiction question are legislative, not adjudicative.

> Adjudicative facts have been described as follows: 'When a court . . . finds facts concerning the immediate parties who did what, where, when, how, and with what motive or intent the court . . . is performing an adjudicative function, and the facts are conveniently called adjudicative facts . . . . They relate to the parties, their activities, their properties, their businesses.' Legislative facts, on the other hand, do not relate specifically to the activities or characteristics of the litigants . . . . Legislative facts are established truths, facts or pronouncements that do not change from case to case but apply universally, while adjudicative facts are those developed in a particular case.

*Gould*, 536 F.2d at 219-20, *citing and quoting* 2 *K. Davis, **Administrative Law Treatise*** § 15.03 (1958), *and footnoting* **Fed. R. Evid. 201, Notes of Advisory Committee**. In *Gould*, this court concluded that cocaine hydrochloride's derivation from coca leaves "simply cannot be appropriately categorized as an adjudicative fact. It does not relate to 'who did what, where, when, how, and with what motive or intent' . . . . [It] is a universal fact that is unrelated to the activities of the parties to this litigation." *Id.* at 220 (alteration added). It is "preposterous" to allow a jury to find that coca leaves qualify as a controlled substance in one proceeding, but not in another. *Id.* at 221. Equally here, whether a particular facility is within federal jurisdiction is a universal truth.

Third, judicially noticed legislative facts need not be submitted to the jury: "The district court [] may take judicial notice of facts. These facts may be either adjudicative or legislative . . . . Rule 201 [] does not extend to legislative facts, and a district court is not obligated to inform the jury that it could disregard the judicially noticed fact." *United States v. Lopez*, 880 F.3d 974, 982 (8th Cir. 2018) (alterations added) (affirming judicial notice of "a legislative fact—that Sioux City lies within the geographic bounds of the Northern District of Iowa."). *See also **Gould***, 536 F.2d at 221 ("It is clear to us that the District Court took judicial notice of a legislative, rather than an adjudicative, fact in the present case and rule 201([f]) is inapplicable.

-6-

The District Court was not obligated to inform the jury that it could disregard the judicially noticed fact.") (alteration added).

A district court may take judicial notice that a place is within the special maritime and territorial jurisdiction of the United States and not submit that issue to the jury, without violating a defendant's Sixth Amendment rights.

Even so, Love argues that the district court abused its discretion by reviewing materials outside the evidence and not identifying them. In light of counsel's lengthy colloquies with the district court and the absence of any specific objection about the materials reviewed, this court's review is at most for plain error. *See **EEOC v. HBE Corp.***, 135 F.3d 543, 551 (8th Cir. 1998) ("A timely and specific objection is necessary for a successful evidentiary appeal in the absence of plain error."), *citing* **Fed. R. Evid. 103**. In any event, we need not address the way the district court took judicial notice, because this court takes judicial notice of special maritime and territorial jurisdiction over the Center. "Judicial notice may be taken at any stage of the proceeding, including on appeal, as long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." **United States v. Jones**, 574 F.3d 546, 551 n.2 (8th Cir. 2009). On appeal, the government presents, for the first time, several public records, including a certified copy of the deed conveying the Center land to the United States in 1931—when federal acceptance of jurisdiction was presumed. *See **United States v. Eagleboy***, 200 F.3d 1137, 1140 (8th Cir. 1999) (public records may be cited for the first time on appeal). *Accord* **Davis**, 726 F.3d at 367-69 (judicial notice of special maritime and territorial jurisdiction taken by Court of Appeals based on documents submitted by the government for first time on appeal).

## III.

Love also challenges the denial of his motions for judgment of acquittal. "Under Federal Rule of Criminal Procedure 29(a), a district court must grant a defendant's motion for judgment of acquittal where the evidence is insufficient to

sustain a conviction." ***United States v. Hardin***, 889 F.3d 945, 949 (8th Cir. 2018). Love argues that the evidence at trial—testimony from three witnesses about the "federal nature" of the Center—was insufficient for a reasonable jury to find, beyond a reasonable doubt, that the Center was within the special maritime and territorial jurisdiction of the United States.

"It is a uniform course of appellate review procedure to decline to review questions not necessary to a decision of an appellate court." ***Caldwell v. DeWoskin***, 831 F.3d 1005, 1009 n.5 (8th Cir. 2016), *quoting* ***Highland Supply Corp. v. Reynolds Metals Co.***, 327 F.2d 725, 729 (8th Cir. 1964). In light of the conclusion above about judicial notice, this court need not address whether the evidence at trial was sufficient for a jury to find that the Center is within the special maritime and territorial jurisdiction of the United States. *See* ***United States v. Johnson***, 738 F. Appx. 798, 799 (4th Cir. 2018) (declining to address sufficiency argument because district court properly took judicial notice that a VA hospital was within the special maritime and territorial jurisdiction of the United States); ***United States v. Styles***, 75 F. Appx. 934, 935 (5th Cir. 2003) (same). *See also* ***Davis***, 726 F.3d at 371 (affirming § 113(a)(6) conviction based on appellate court's judicial notice of special maritime and territorial jurisdiction, despite insufficient evidence presented at trial); ***United States v. Redmond***, 748 F. Appx. 760, 761-62 (9th Cir. 2018) ("Redmond argues the government did not provide sufficient evidence to show the assault occurred within the 'special maritime and territorial jurisdiction' of the United States . . . . We do not need to address Redmond's sufficiency of the evidence claim, however, because we can and do take judicial notice that the United States Penitentiary USP at Victorville ('USP Victorville') is within the special maritime and territorial jurisdiction of the United States.").

\* \* \* \* \* \* \*

The judgment is affirmed.

_____