# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3665

_____

Greg Hageman

*Plaintiff - Appellant*

v.

Dennis J. Barton, III

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 23, 2015
Filed: March 29, 2016

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

MELLOY, Circuit Judge.

Greg Hageman appeals the district court's Federal Rule of Civil Procedure 12(b)(6) dismissal of his Fair Debt Collection Practices Act ("FDCPA") claims. Upon de novo review, we affirm in part, reverse in part, and remand.

## I. Background

Hageman incurred an allegedly disputed debt to St. Anthony's Medical Center ("St. Anthony's"). St. Anthony's assigned this debt to Roger Weiss ("Weiss") or his collection agency, Consumer Adjustment Company, Inc. ("CACi"). The assignment document at issue specifically "authorize[d] CACi to file suit against [Hageman] in its own name as assignee and to include in the lawsuit claims of other creditors."[1]

Weiss and CACi, in turn, hired attorney Dennis J. Barton, III ("Barton"), to collect the debt. Through an October 2012 collection letter, a subsequent phone call, and a November 2012 collection action in Missouri state court, Barton pursued collection from Hageman. Barton named St. Anthony's as the creditor in the letter and as the plaintiff in the lawsuit. He attached to his state complaint the assignment document referenced above. He did not otherwise make reference to Weiss or CACi, indicate any other party held an interest in the debt, or indicate he represented an entity other than St. Anthony's. In the letter and in Missouri court filings, he expressly stated that he represented St. Anthony's.

Hageman did not defend the collection action, and Barton obtained a default judgment on behalf of the named plaintiff, St. Anthony's, on December 5, 2012. The state court petition had sought "$1,510.35, together with interest thereon at the rate of 9.000 percent per annum from December 2, 2011." The default judgment was for "$1,510.35 Principal," "$135.56 Interest," and "$0.0 Attorney's Fees," for a total of

---

[1] The assignment document indicated the assignment occurred pursuant to Missouri Revised Statutes § 425.300. Section 425.300 generally provides for the assignment of legal title to an assignee for collection purposes and may provide for the assignor's retention of an equitable claim to the debt. See Skaggs Reg'l Med. Ctr. v. Powers, 419 S.W.3d 920, 922–23 (Mo. Ct. App. 2014) (holding a partial assignment pursuant to § 425.300 for collection purposes did not deprive the assignor hospital of standing to sue in its own name); see also Mueller v. Barton, 2014 WL 4546061, at *9–10 (E.D. Mo. Sept. 12, 2014) (discussing Skaggs).

"$1,645.91 Total, plus Court costs." The default judgment also provided, "Costs of court and any costs for special process server taxed to Defendant. Judgment to bear interest at the rate of 9.000% per annum."

On March 26, 2013, Barton filed the judgment in Madison County, Illinois, to register the foreign judgment. He filed four items, a "Memorandum to Clerk," a copy of the Missouri judgment, a "Notice [sic] the Judgment Debtor of the filing of Foreign Judgment by Judgment Creditor," and an "Affidavit of Judgment Creditor's attorney's [sic]." The Missouri judgment listed St. Anthony's as the plaintiff and Hageman as the defendant. All three other items, however, were captioned "SUNSHINE ENTERPRISES OF MISSOURI D/B/A SUNSHINE TITLE & CHECK LOAN, Plaintiff, vs. GREGORY HAGEMAN, Defendant." Hageman neither worked nor resided in Madison County, Illinois. His employer was located in a different Illinois county, and St. Anthony's is located in Missouri.[2] No party offered an explanation for the "SUNSHINE" caption nor identified that entity.

Employing the same case number in Madison County, Illinois, Barton initiated garnishment proceedings. Hageman received notice of the proceedings, but he neither lodged defenses with his employer nor participated in the court proceedings. Hageman's employer received and completed a form "INTERROGATORIES / ANSWERS TO WAGE DEDUCTION PROCEEDINGS" which were filed with the court in Madison County on November 21, 2013. The court entered a "WAGE DEDUCTION ORDER" on December 4, 2013, authorizing deductions from Hageman's wages in the total amount of $2,068.96. The order identified the $2,068.96 as consisting of the $1,645.91 judgment amount "plus 9% simple interest and costs of $423.05." The order was captioned "ST. ANTHONY'S MEDICAL

---

[2]The parties agree that Illinois law permits the registration of foreign judgments in any Illinois county regardless of the judgment debtor's residence or the county of his place of work. See 735 Ill. Comp. Stat. 5/12-652(a) (stating that a foreign judgment "may be filed in the office of the circuit clerk for any county").

CENTER[,] Plaintiff, [vs.] GREGORY HAGEMAN[,] Defendant[.]"  It is not clear when Barton amended the plaintiff in the caption for the Madison County case from the "SUNSHINE"-named entity to St. Anthony's.

Hageman alleges he discovered in December 2013 that Barton did not actually represent St. Anthony's.  On December 19, 2013, Hageman filed the present FDCPA action against Barton, Weiss, and CACi, also alleging state law claims.[3]  In his FDCPA claims, Hageman alleged that Barton did not represent St. Anthony's and that the assignment pursuant to Missouri Revised Statutes § 425.300 did not permit the assignee to file suit solely in the name of the assignor.  Hageman alleged these misrepresentations along with certain claims for interest and costs violated 15 U.S.C. § 1692d–f in several respects.  Specifically, Hageman alleged unfair practices and misleading statements related to: "[f]iling multiple suits against Plaintiff on behalf of St. Anthony's . . . when Defendant's [sic] knew that the real party in interest was CACi and/or Weiss"; "representing that Barton represented St. Anthony's . . . and that St. Anthony's was the real party in interest . . . ."; and "[g]arnishing funds from Plaintiff under the guise that the garnishor was St. Anthony's . . . when in reality the garnishors were Barton, Weiss, and CACi."  Hageman also alleged Barton filed suit in an improper judicial district in violation of the venue provision of 15 U.S.C. § 1692i.  Finally, he alleged Barton attempted to "collect amounts that Plaintiff never owed including an inflated principal balance, inflated and illusory interest charges, and inflated and illusory 'costs.'"

Barton moved for dismissal of the pleadings asserting a one-year statute of limitations from the FDCPA.  In a separate motion, Barton asserted that the Rooker-

---

[3]Claims against Weiss and CACi have been dismissed pursuant to the terms of a confidential settlement agreement and are not on appeal.

Feldman doctrine[4] precluded federal court jurisdiction over Hageman's FDCPA claims because the claims were merely an attack upon the underlying Missouri judgment and Illinois wage deduction order.

The district court rejected the Rooker-Feldman argument as a general matter; found the one-year statute of limitations barred any claim based on the October 2012 letter, the phone call, or the Missouri state court action; and held the Illinois proceedings were not lawsuits "against a consumer" as required to trigger the venue limitations of 15 U.S.C. § 1692i. The district court, however, appears to have applied the Rooker-Feldman doctrine to dispose of at least some of the claims, stating:

> Furthermore, because plaintiff failed to timely challenge defendant's actions with respect to the [Missouri] action, and Rooker-Feldman prevents him from challenging the legitimacy of the state court judgment, plaintiff cannot succeed on his claims that defendant wrongfully attempted to collect the full amount of the default judgment or misrepresented the real parties in interest in doing so.

The district court did not expressly address the allegations that, in the Illinois proceedings, Barton attempted to collect amounts in interest and costs above the amounts authorized by the Missouri judgment or that he misrepresented himself as the attorney for St. Anthony's.

## II. Discussion
### A. Rooker-Feldman

The Rooker-Feldman doctrine precludes lower federal courts from exercising jurisdiction over actions seeking review of, or relief from, state court judgments. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291–93 (2005). The

---

[4] D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923).

doctrine is limited in scope and does not bar jurisdiction over actions alleging independent claims arising from conduct in underlying state proceedings. See id. at 293; see also MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l Ass'n, 546 F.3d 533, 539 (8th Cir. 2008) ("The doctrine does not apply to cases that raise independent issues."). The boundaries for application of the doctrine depend upon the nature of the federal claims and whether the plaintiff in federal court, in fact, seeks relief from the state court judgment. See Riehm v. Engelking, 538 F.3d 952, 965 (8th Cir. 2008) ("If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, Rooker-Feldman bars . . . jurisdiction . . . . If, on the other hand, a . . . plaintiff asserts . . . an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction." (citation omitted)).

The Supreme Court clarified this distinction in Exxon Mobil Corp., when it rejected the broad application of the doctrine and confined application of the doctrine to federal actions seeking review of and relief from state court judgments. 544 U.S. at 293. In doing so, the Court stated the doctrine does not apply in federal cases that merely attack the legal conclusions of the state court without seeking relief from the state court judgment. Id. As to such cases, the Court noted, jurisdiction exists, but traditional state-court preclusion principles may prevent a federal plaintiff from succeeding on the merits. See id. ("If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" (quoting GASH Assocs. v. Rosemont, 995 F.2d 726, 728 (7th Cir. 1993)) (alterations in original)); see also MSK EyEs Ltd., 546 F.3d at 539 (rejecting application of the doctrine and stating, "[a]lthough Appellants complain of injuries caused by the state court judgment, their claims do not seek review and rejection of that judgment. They do not challenge the court's issuance of the judgment or seek to have that judgment overturned").

FDCPA claims often involve allegations of misconduct in underlying and completed state-court litigation. The fact of prior litigation and the existence of a prior collection-related judgment, however, does not in and of itself trigger application of the Rooker-Feldman doctrine. In Janson v. Katharyn B. Davis, LLC, for example, we recently held the doctrine did not apply in an FDCPA action where a state court judgment debtor alleged a debt collector had sworn an affidavit in state court "without knowing whether . . . the information contained in the affidavit was true." 806 F.3d 435, 437 (8th Cir. 2015). We concluded the FDCPA plaintiff was attempting to raise an independent claim because the judgment debtor did not actually allege the information in the underlying affidavit was false and did not seek to disturb the underlying judgment. See id. Rather, the state court judgment debtor merely alleged the debt collector's act of falsely swearing to possess personal knowledge was a "false, deceptive, or misleading representation." Id. (quoting 15 U.S.C. § 1692e). And in Banks v. Slay, 789 F.3d 919, 922 (8th Cir. 2015), we emphasized that the doctrine only applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced *and inviting district court review and rejection of those judgments*." Id. (emphasis added) (quoting Exxon Mobil Corp., 544 U.S. at 284). We also emphasized that the doctrine's application is not triggered by the mere fact that an issue had been previously litigated in state court. Id. at 923. In short, prior litigation of an issue in state court may trigger traditional preclusion principles, but it does not necessarily strip the federal courts of jurisdiction.[5]

---

[5]Barton cites several district court cases from California in addition to a Seventh Circuit case for the proposition that, even after Exxon Mobil Corp., the Rooker-Feldman doctrine may find broad application in the context of FDCPA suits that do not actually seek relief from underlying state court judgments. See Kelley v. Med-1 Sols., LLC, 548 F.3d 600, 605 (7th Cir. 2008); Grant v. Unifund CCR Partners, 842 F. Supp. 2d 1234, 1239 (C.D. Cal. 2012); Fleming v. Gordon & Wong Law Grp., P.C., 723 F. Supp. 2d 1219, 1223 (N.D. Cal. 2010); Bryant v. Gordon & Wong Law Grp., P.C., 681 F. Supp. 2d 1205, 1208 (E.D. Cal. 2010). While Barton is correct that these cases appear to maintain a broad application for Rooker-Feldman even after Exxon

Here, Barton obtained a Missouri default judgment on the initial debt action. He then obtained the Illinois wage garnishment order with no defense or objection from Hageman. "The fact that a judgment was entered on a party's default does not alter the applicability of the Rooker-Feldman doctrine." MSK EyEs Ltd., 546 F.3d at 539. Through his federal complaint, Hageman seeks relief from neither the Missouri judgment nor the Illinois garnishment order. Rather, he alleges statutory violations seeking statutory penalties based on Barton's actions in the process of obtaining the judgment and order. As such, Rooker-Feldman does not apply, and we may exercise jurisdiction over Hageman's federal claims.

### B. Statute of Limitations-Equitable Tolling

The FDCPA contains a one-year statute of limitations. 15 U.S.C. § 1692k(d). Hageman filed his federal complaint on December 19, 2013, more than one year after the Missouri trial court entered the default judgment in the underlying collection action. In his complaint, Hageman directed his allegations of misconduct broadly towards acts by Barton that occurred prior to the Missouri proceedings, during the Missouri proceedings, and during the Illinois proceedings. See, e.g., Complaint at ¶ 74.a. ("Filing multiple suits . . . ."); ¶ 74.d. ("Garnishing funds . . . ."); ¶ 74.c. ("Attempting to collect . . . inflated and illusory interest . . . and . . . costs"). Because Barton's actions that occurred prior to entry of the Missouri judgment preceded the federal complaint by more than one year, claims based on such actions are time-barred in the absence of equitable tolling. Hageman alleges Barton's allegedly improper

---

Mobil Corp., we find them at odds with our own cases as cited above. We also find them generally at odds with the FDCPA itself which places restrictions on debt collectors' conduct and includes within the definition of "debt" sums already reduced to judgment. 15 U.S.C. § 1692a(5). Through this definition, Congress made clear its intent that the FDCPA apply to debt collectors' abusive tactics in the collection of judgment debts. As such, it would be strange, indeed, if the Rooker-Feldman doctrine could so expeditiously insulate debt collectors from FDCPA suits alleging abusive tactics during attempted collections on judgments.

ongoing conduct following entry of the Missouri judgment tolls the statute of limitations.

Hageman's argument in this regard is foreclosed by Mattson v. U.S. W. Comm'ns, Inc., 967 F.2d 259 (8th Cir. 1992), in which we treated the FDCPA's statute of limitations as jurisdictional. It is well-established, as a general matter in the Eighth Circuit, that jurisdictional limitation periods are not subject to equitable tolling. See Kreutzer v. Bowersox, 231 F.3d 460, 463 (8th Cir. 2000). Hageman nonetheless argues that we may ignore Mattson because the court in Mattson did not give extensive treatment to the question of the jurisdictional nature of the FDCPA's statute of limitations and did not address the jurisdictional/non-jurisdictional nature of the FDCPA's limitation provision for purposes of applying equitable tolling.

Hageman misconstrues our duty to follow a prior panel. Our duty is not governed by the length or depth of the prior panel's treatment of an issue. Rather, it is governed by whether the cases are materially distinguishable and whether the prior panel's treatment of the issue resulted in a holding or mere dicta. As such, we decline Hageman's invitation to disregard Mattson.

In Mattson, a plaintiff filed an FDCPA action against a debt collector one year and one day after the last actionable conduct by the debt collector. Mattson, 967 F.2d at 261. The court faced the question of whether the date of the last act was the date to be used for measuring the one-year limitations period or whether, as with many date calculations under the Federal Rules of Civil Procedure, the day immediately following the last act should be treated as "day one" in the count. The court held the "next day" rule from the Federal Rules did not apply because the Federal Rules do not apply unless and until jurisdiction is established. Id. at 262.

In so holding, the court captioned its discussion "Jurisdiction" and referred to jurisdiction several times. Id. at 260–62 ("[section] 1692k(d) is a jurisdictional statute

-9-

. . . [adding the extra day would] extend the jurisdiction of federal courts . . . We are not at liberty to disregard the jurisdictional limitations Congress has placed upon the federal courts, however appealing it might be to interpret section 1692k(d) in such a way as to permit Mattson's action to proceed"). Hageman is correct that the panel in Mattson did not explain its conclusion that the statute of limitations was jurisdictional. Still, the court clearly held that the limitation was jurisdictional, and the references to the jurisdictional nature of the limitation were not mere dicta. See Moore v. United States, 173 F.3d 1131, 1134 (8th Cir. 1999) ("We declined to apply Rule 6(a) in Mattson because the statute of limitations in the FDCPA was jurisdictional, and Fed. R. Civ. P. 82 prevents the use of the Rules of Civil Procedure to extend the jurisdiction of district courts."). Because equitable tolling does not apply, all of Hageman's FDCPA claims directed towards conduct that preceded the Illinois proceedings are time barred.

## C. FDCPA Venue Restriction

Hageman argues Barton violated 15 U.S.C. § 1692i by registering the judgment and pursuing the garnishment order in Madison County, Illinois, a county where Hageman neither worked nor resided and which bore no relationship to the underlying debt. We conclude that § 1692i's venue restriction does not apply to the simple act of registering a foreign judgment in Illinois or to proceedings pursuant to Illinois law to obtain a garnishment order against a debtor's employer.

15 U.S.C. § 1692i(a) provides:

> Any debt collector who brings *any legal action on a debt against any consumer shall* . . . (2) in the case of an action not [to enforce an interest in real property securing the consumer's obligation], bring such action only in the judicial district or similar legal entity (A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action.

(Emphasis added). In addition, as already noted, the definitions section of the FDCPA defines "debt" to include obligations reduced to judgment. Id. § 1692a(5); supra n.5. The FDCPA, therefore, generally applies to efforts to collect upon judgment debts. The venue restriction of § 1692i, however, applies only to legal actions "on a debt against any consumer." Id. As such, the applicability of § 1692i depends upon whether the registration of a foreign judgment and the garnishment proceedings pursuant to Illinois law are legal actions "against any consumer." Id.

Smith v. Solomon & Solomon, 714 F.3d 73 (1st Cir. 2013), cited by Barton, is the only circuit level case to fully address the question of whether the FDCPA's venue provision restricts where a judgment creditor may register a judgment and effect garnishment. There, the First Circuit found the garnishment proceeding under examination was not an action "against any consumer." Smith, 714 F.3d at 75 (quoting 15 U.S.C. § 1692i(a)). In Smith, a judgment creditor sought to effect garnishment in Massachusetts using a state garnishment regime in which suit is directed towards the employer, as a trustee, rather than against the debtor. Id. at 74. The First Circuit noted the details of the Massachusetts regime which, like the Illinois regime in the present case, provided for action against the employer/trustee with summons directed towards the employer/trustee and with an opportunity for the judgment debtor to raise defenses. Id. at 74–75. The court concluded, "Fundamentally . . . a Massachusetts trustee process action is geared toward compelling the *trustee* to act, not the debtor." Id. at 76.

The court also noted that express federal preemption language in the FDCPA preempted state laws only to the extent state laws were inconsistent with the FDCPA. The court found nothing inconsistent between the Massachusetts garnishment regime and the FDCPA because "[t]he original suit to collect on the debt occurred in a forum that was convenient for [the consumer debtor], and she had an opportunity to defend against it. She was not, in the words of Congress, 'denied [her] day in court.'" Id. at

-11-

76 (quoting S. Rep. No. 95-382 at 5 (1977), reprinted in 1997 U.S.C.C.A.N. 1695, 1699). And in reaching this conclusion, the court cited as additional support commentary from the Federal Trade Commission, which the court found persuasive but which the court acknowledged was not entitled to Chevron-level deference. See id. ("If a judgment is obtained in a forum that satisfies the requirements of [§ 1692i], it may be enforced in another jurisdiction, because the consumer previously has had the opportunity to defend the original action in a convenient forum." (quoting Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,109 (Dec. 13, 1988))).

Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507 (9th Cir. 1994), cited by Hageman, touched upon a similar question but is not directly on point. In Fox, the Ninth Circuit concluded merely that an action to enforce or collect upon a previously obtained judgment was, in fact, a legal action to collect a debt. Id. at 1515. The court cited the definitions section of the FDCPA to emphasize that the definition of "debt" included obligations reduced to judgment. Id. The Ninth Circuit did not, however, address the issue of whether a collection action would be deemed to be an action "against any consumer" where funds were sought from an employer or other type of trustee or entity owing funds to the debtor.

Because Illinois law is akin to Massachusetts law in that a garnishment suit compels action by the employer rather than the judgment debtor, we conclude the sound reasoning of the First Circuit should apply. A garnishment summons in Illinois is made against the judgment-debtor's employer. See 735 Ill. Comp. Stat. § 5/12-805. The process imposes duties upon the employer, including potential liability for the judgment debtor's debt if the employer fails to comply with the garnishment regime. See id. § 5/12-808(e) & (f). The debtor is given notice of the employer's answers to interrogatories and wage deduction calculations prior to garnishment. See id. § 5/12-808(c). And the debtor may appear to contest the employer's answers to interrogatories. See id. § 5/12-811(a). Because Barton's use of the Illinois courts did

not amount to an action "against the consumer," those actions were not subject to the FDCPA's venue restriction.[6]

D. Allegations of Other Violations in Illinois Proceedings-Issue Preclusion

Our conclusion that no § 1692i violation occurred does not fully dispose of Hageman's claims as they relate to Barton's actions in Illinois. Hageman alleged not only that Barton sought unauthorized interest in the initial Missouri action, but that he sought separate and additional unauthorized interest as well as unauthorized costs in the Illinois action, all allegedly in violation of the FDCPA. See 15 U.S.C. § 1692f(1) (listing as an FDCPA violation "[t]he collection of any amount (including any interest . . .) unless such amount is expressly authorized by the agreement creating the debt or permitted by law"). Hageman also alleged that, in the Illinois proceedings, Barton improperly identified St. Anthony's as the creditor and as Barton's client, in violation of the FDCPA. See id. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."); id. § 1692e(14) (listing as an FDCPA violation "[t]he use of any business, company, or organization name other than the true name of the debt collector's

---

[6]Barton cites 740 Ill. Comp. Stat. § 170/2, 2.2, and 4.2, provisions that appear to govern wage assignments pledged as security on written contracts and the requirements for enforcement of such assignments. The provisions cited above and cited by Hageman, appear to govern garnishments based upon judgments. The limited state court materials in the record generally do not discuss the applicable law or reference what provisions of Illinois law support the wage deduction order. One provision of the interrogatories to the employer, however, cite "§ 5/12-814," an Illinois code provision seemingly more fitting to the events in this case than the code provisions Barton cites. In any event, the employer-focused nature of the garnishment proceedings pursuant to *either* Chapter 735 or 740 of the Illinois Statutes appears constant.

-13-

business, company, or organization").[7]  These claims are separate from the claim alleging a violation of the § 1692i venue restriction, they are not barred by the statute of limitations, and our jurisdiction is not precluded under Rooker-Feldman.

To survive a motion to dismiss under Rule 12(b)(6) a plaintiff must allege sufficient facts, as contrasted with bare legal conclusions, to articulate a claim "that is plausible on its face." See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. To succeed on the claims of independent FDCPA violations based upon the interest and costs Barton sought in the Illinois proceedings, Hageman must establish that the amounts sought were not authorized by law or by contract. See 15 U.S.C. § 1692f(1). Hageman has alleged facts demonstrating an interest amount asserted in the Illinois proceedings that, on its face, substantially exceeds any sum consistent with the rate of interest authorized by the Missouri judgment. We therefore conclude Hageman has stated a claim that is plausible.

To succeed on his claims based upon Barton's alleged misrepresentation as to the identity of his client and the creditor, Hageman must show a representation that was false and likely to have misled an "unsophisticated consumer." See Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1055 (8th Cir. 2002) (describing the test for actionably misleading statements pursuant to § 1692e). Hageman has alleged sufficient facts to plausibly demonstrate that Barton was at all times counsel for Weiss or CACi and not counsel for St. Anthony's. Further, the assignment document (which

---

[7]Hageman also argues Barton's initial Illinois filing captioned "SUNSHINE ENTERPRISES OF MISSOURI D/B/A SUNSHINE TITLE & CHECK LOAN" amounted to an actionably misleading statement under the FDCPA. Hageman, however, did not advance this argument below and cannot raise it now. See Glickert v. Loop Trolley Transp. Dev. Dist., 792 F.3d 876, 883–84 (8th Cir. 2015).

was provided to the court by Barton and is encompassed by the pleadings)[8] supports a plausible claim that Barton and CACi were not permitted by the terms of the assignment to bring suit in St. Anthony's name. Hageman's misrepresentation claim, therefore, also survives Twombly.

To the extent Barton argues Hageman should be barred by traditional state-law preclusion doctrines from asserting these claims, we decline to address such arguments at this time. As noted above, the inapplicability of the Rooker-Feldman doctrine leaves open the possible applicability of traditional, non-jurisdictional preclusion doctrines. Exxon Mobil Corp., 544 U.S. at 293. In this regard, Hageman does not allege that he failed to receive notice of the garnishment proceedings or the foreign registration. Preclusion, therefore, may ultimately prevent Hageman's success on either or both claims.

Still, the parties have not briefed arguments concerning the contours of traditional preclusion under Illinois law, and they do not even agree as to what Illinois law governed the garnishment action. See supra n.7. Because this case arises from a motion to dismiss, the record is scant and the only state-court materials before us fail to clarify the applicable law. Without pinning down the appropriate Illinois statute employed for garnishment, it remains unclear what if any preclusive effect the wage garnishment order should carry, whether it serves as a final judgment, and what arguments Hageman may have waived by failing to assert them in state court. Further, it is unclear when Hageman could have discovered the facts of Barton's alleged

---

[8]In addressing a motion to dismiss, we may look to the pleadings, documents attached to the pleadings, "materials embraced by the pleadings . . . and matters of public record." Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011). Here, Hageman referenced the "assignment document" in his complaint, and Barton supplied the "assignment of claim" document with his motion to dismiss. Hageman does not challenge our ability to consider the assignment of claim document in general. Rather, he presents argument contesting the meaning of that document.

misrepresentations regarding the identity of his client, and the matter is only complicated by Barton's initial filings in Illinois court in the name of the wholly separate and unexplained "SUNSHINE" entity.

We generally do not address arguments not raised in the briefs, and we believe it prudent to follow this general rule when the briefing that has taken place fails to fully articulate the nature of the underlying proceedings.  See In re MidAmerican Energy Co., 286 F.3d 483, 487 (8th Cir. 2002).  We also believe it prudent to avoid these issues at this early stage of the proceedings given the clear opportunity for parties to present these issues on remand.

### III.

In summary, we affirm the judgment of the district court rejecting application of the Rooker-Feldman doctrine, dismissing as time barred the FDCPA claims based upon Barton's actions prior to and during the Missouri proceedings, and dismissing the § 1692i venue claim.  We reverse the judgment of the district court dismissing the claims that allege independent FDCPA violations in the Illinois proceedings related to the identity of Barton's client and the amounts of interests and costs asserted.  And we decline at the pleading stage of this case to apply state-law preclusion principles to these remaining claims due to the absence of briefing and the parties' failure to clearly identify the state law applied by the Illinois court.  Because federal claims remain, we also reverse the discretionary dismissal of the state law claims and remand for further proceedings consistent with this opinion.

_____