# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1962
_____

Reynal Caldwell

*Appellant*

v.

Alan E. DeWoskin; Alan E. DeWoskin, P.C.; Theresa Caldwell Lavender

*Appellee*s

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 12, 2016
Filed: August 5, 2016

_____

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Reynal Caldwell (Caldwell) appeals the grant of summary judgment in favor of his ex-wife, Theresa Caldwell Lavender (Lavender), and her attorney Alan E. DeWoskin and his law firm (DeWoskin). Caldwell also appeals the denial of his motion for summary judgment. Because we conclude the court erred in granting

DeWoskin and Lavender summary judgment based on the <u>Rooker</u>–<u>Feldman</u> doctrine,[1] we reverse and remand.[2]

## I. Background

The facts are undisputed. DeWoskin represented Lavender in the dissolution of her marriage to Caldwell. In the Judgment of Dissolution, filed December 3, 2009, Caldwell was ordered to pay $2,500 per month in maintenance to Lavender, to pay $3,000 toward a U.S. Bank credit card debt, to pay $5,544.75 in attorney's fees to DeWoskin, and to either pay or refinance loans on property he owned. Caldwell appealed the decree of dissolution.

When Caldwell failed to make payments, DeWoskin, on behalf of Lavender, filed a motion in Missouri state court requesting the court set a hearing to determine whether Caldwell should be held in contempt. On July 16, 2010, following a hearing, a Judgment Order of Contempt was entered against Caldwell. He was ordered to pay Lavender $20,000, plus 9% interest, for the monthly maintenance that had accrued since the divorce, attorney's fees, and other debts ordered under the Judgment of Dissolution by August 10, 2010. On August 6, 2010, Caldwell sent two letters, one to Lavender and one to DeWoskin, stating he would pay Lavender only $1.00 per year until the day he died. On August 11, 2010, after Caldwell again failed to make any payments, DeWoskin filed a motion requesting a hearing be set to determine whether a warrant and commitment order should be issued for Caldwell based on his failure to follow the court's July 16 order. A hearing was set for August 24, 2010.

---

[1]The <u>Rooker</u>–<u>Feldman</u> doctrine derives its name from two United States Supreme Court cases, <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923) and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983).

[2]We have jurisdiction under 28 U.S.C. § 1291.

On August 17, 2010, Caldwell filed a Chapter 13 bankruptcy case in the Bankruptcy Court for the Eastern District of Missouri. At the August 24, 2010, contempt hearing in state court, both Caldwell and Lavender were represented by counsel. DeWoskin, on behalf of Lavender, acknowledged receipt of Caldwell's notice of bankruptcy and requested the court rule on whether the automatic stay applied to the state contempt proceeding. Caldwell's attorney argued the automatic stay stopped the state court from proceeding. The court continued the hearing to August 27, 2010, to research the issue. After again hearing argument from Caldwell's counsel at the August 27 hearing, the court decided the automatic stay did not prevent it from holding Caldwell in contempt, and so held. Caldwell was committed to the St. Louis City Jail until he purged himself of contempt by paying the amounts set forth in the court's previous orders. A friend of Caldwell posted bond in the amount of $22,500—the amount of maintenance that had accrued since December 2009—and he was released from jail on August 28, 2010.

On September 14, 2010, at the request of DeWoskin and Lavender, the state court held another hearing to address Caldwell's continued failure to pay maintenance to Lavender as ordered in the court's previous contempt order. The court ordered Caldwell to pay the maintenance payment due on September 15, 2010, or face another emergency contempt hearing within one week. Instead, on September 16, 2010, Caldwell appealed the July 16 Judgment of Contempt to the Missouri Court of Appeals.

DeWoskin made additional attempts on Lavender's behalf to collect the maintenance due, including motions for orders to withhold Caldwell's wages. On November 9, 2010, friends of Caldwell posted a $25,000 appeal bond to stay collection of the judgment for maintenance pending the outcome of the appeal of the original decree of dissolution. On March 22, 2011, the Missouri Court of Appeals affirmed the decree of dissolution. On April 28, 2011, DeWoskin applied to the court for a payout

order on the $25,000 appeal bond that had been posted on Caldwell's behalf, which the court issued.

On May 17, 2011, the Missouri Court of Appeals reversed the Judgment of Contempt and Commitment entered against Caldwell, finding that the district court abused its discretion by not determining whether Caldwell had the financial ability to make the payment necessary to purge himself of contempt before ordering him jailed and did not make sufficient findings to support the judgment. Because the Court of Appeals found those two points on appeal "dispositive," it did not address Caldwell's final point.[3] See Caldwell v. Caldwell, 341 S.W.3d 734, 737 (Mo. Ct. App. 2011).

Caldwell's bankruptcy case was dismissed on July 20, 2011, and the case was closed on August 4, 2011. On January 11, 2013, Caldwell filed a complaint against DeWoskin and Lavender in federal district court alleging they violated the automatic stay and seeking damages pursuant to 11 U.S.C. § 362(k). Caldwell alleged DeWoskin and Lavender violated the automatic stay by requesting the state court hold Caldwell in contempt, requesting wage withholding orders, and seeking a payout order on the $25,000 appeal bond. The district court referred Caldwell's claim to the bankruptcy court on January 13, 2014.

DeWoskin and Lavender moved to dismiss the complaint but their motion was denied. DeWoskin and Lavender filed their answer and affirmative defenses, including the defense of res judicata and lack of subject-matter jurisdiction based on the Rooker–Feldman doctrine. Caldwell moved for summary judgment on the issue of liability. DeWoskin and Lavender resisted, again referencing the Rooker–Feldman doctrine in their response to Caldwell's motion. The bankruptcy court denied

---

[3]Although the Missouri Court of Appeals did not identify what Caldwell's "final point" on appeal was, the parties do not dispute that it involved an appeal of the state district court's determination that the automatic stay did not apply to the contempt proceedings.

Caldwell's motion for summary judgment, and sua sponte granted defendants summary judgment, concluding it lacked subject-matter jurisdiction under the Rooker–Feldman doctrine. The district court affirmed.

## II. Discussion

Although this is an appeal from the district court, our review is of the bankruptcy court's decision. In re Bowles Sub Parcel A, LLC, 792 F.3d 897, 901 (8th Cir. 2015). Like the district court, "we review the bankruptcy court's finding of fact for clear error and its conclusions of law de novo." Id. (quoting Tri-State Financial, LLC v. First Dakota Nat'l Bank, 538 F.3d 920, 923 (8th Cir. 2008)). We review the bankruptcy court's grant of summary judgment de novo. Contemporary Indus. Corp. v. Frost, 564 F.3d 981, 984 (8th Cir. 2009).

Caldwell first challenges the bankruptcy court's conclusion that it lacked jurisdiction under the Rooker–Feldman doctrine. Under the Rooker–Feldman doctrine, a lower federal court cannot exercise subject-matter jurisdiction over an action that "seek[s] review of, or relief from, state court judgments." Hageman v. Barton, 817 F.3d 611, 614 (8th Cir. 2016). The bankruptcy court concluded the doctrine applied because, in order for Caldwell's complaint to succeed in federal court, the court would have to overrule the state court's determination that the automatic stay did not apply to the state court contempt proceedings. We conclude the bankruptcy court construed the Rooker–Feldman doctrine too broadly.

In Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005), the Supreme Court specifically confined the Rooker–Feldman doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284. Whether the doctrine applies depends on whether a federal plaintiff seeks relief from a state court judgment based on an

allegedly erroneous decision by a state court—in which case the doctrine would apply—or seeks relief from the allegedly illegal act or omission of an adverse party. Hageman v. Barton, 817 F.3d 611, 615 (8th Cir. 2016); see also MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l Ass'n, 546 F.3d 533, 539 (8th Cir. 2008) (rejecting application of the doctrine in a case where appellants did not challenge the state court's "issuance of the judgment or seek to have that judgment overturned").

Here, Caldwell is not "complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." Exxon Mobil, 544 U.S. at 291. As Caldwell points out, the state court's Judgment of Contempt was vacated on appeal. Instead, Caldwell seeks compensation for injuries he alleges were caused by the actions DeWoskin and Lavender took to enforce the state court's July 2010 Judgment of Contempt after the automatic stay was in place.[4] Caldwell's claims are not barred by Rooker–Feldman because they challenge the actions taken by DeWoskin and Lavender "in seeking and executing the [state contempt orders]," rather than the state court orders themselves. See Riehm v. Engelking, 538 F.3d 952, 965 (8th Cir. 2008).

Accordingly, we conclude the bankruptcy court erred in holding that it was barred by the Rooker–Feldman doctrine from considering Caldwell's claims, and reverse its grant of summary judgment. We note that "Rooker–Feldman does not otherwise override or supplant preclusion doctrine," Exxon Mobil, 544 U.S. at 284,

_____

[4]Although in the bankruptcy court Caldwell also challenged the post-petition actions taken by DeWoskin and Lavender to have his wages withheld and to have the $25,000 appeal bond paid out to Lavender, on appeal he concedes "[t]he collection of bond funds and the wage withholding from property of the estate may not have been a violation of the automatic stay." We need not address any claim based on these actions because Caldwell makes no meaningful argument regarding these actions in his opening brief and so these claims are waived. See Chay-Velasquez v. Ashcroft, 367 F.3d 751, 756 (8th Cir. 2004) ("Since there was no meaningful argument on this claim in his opening brief, it is waived.").

and we remand to the bankruptcy court to determine whether Caldwell's claims are precluded based on the state court's determination that the automatic stay did not bar its contempt proceedings.[5]

---------------------------------

[5]Because the bankruptcy court's summary judgment was based on its conclusion it lacked jurisdiction to consider Caldwell's claims, rather than a judgment on the merits, we decline to address Caldwell's appeal of the denial of his motion for summary judgment. See Acton v. City of Columbia, Mo., 436 F.3d 969, 973 (8th Cir 2006) ("In general, denials of summary judgment are interlocutory and thus not immediately appealable." (quoting Helm Fin. Corp. v. MNVA R.R., Inc., 212 F.3d 1076, 1079 (8th Cir. 2000)). Caldwell also challenges the bankruptcy court's decision to sua sponte grant DeWoskin and Lavender summary judgment. It is not necessary for us to address this issue on appeal since we are otherwise reversing the grant of summary judgment. See Highland Supply Corp. v. Reynalds Metals Co., 327 F.2d 725, 729 (8th Cir. 1964) ("It is a uniform course of appellate review procedure to decline to review questions not necessary to a decision of an appellate court.").